## MARY A. DAVIS v. ALEX. SMITH.

(Case No. 1647.)

1. SURVEY — BOUNDARY.— No superior dignity, in comparing the calls of a survey, attaches to the beginning corner over any other; and since course and distance must yield when in conflict with a natural object called for in a survey, if that natural object is called for at any corner, the lines of the survey may be determined by beginning at that point instead of at the corner designated as the beginning corner in the field notes.

2. SURVEY.— See opinion for facts under which it was held proper, in determining the lines of a survey, to begin at the second corner called for in the field notes, which was a point "seventy varas west of a spring" (about the locality of which there was no disagreement), and then, by reversing the calls, determine the beginning corner and fix the locality of the survey.

3. ACQUIESCENCE.— In 1858 parties owning land on contiguous surveys took possession of their respective tracts, leaving a lane one hundred yards wide between their fences; the boundary, as claimed by one of the parties, being a line running through this lane and terminating opposite a spring called for in the field notes. The lane was afterwards, by mutual consent, reduced in width to forty feet, by both parties moving their fences towards the center of it, the line from opposite the spring still running through it. In 1874 a surveyor ran a divisional line for the claimants, when one of them, whose fence was found to be over the line thus established, withdrew his fence to the line then run, where it remained until 1880, when suit was brought by the other party against the vendee of him who had moved his fence to establish that line. *Held:* The facts sufficiently established an acquiescence in the boundary line fixed in 1874 to estop the plaintiff from disavowing and holding up to a different line.

APPEAL from Trinity. Tried below before the Hon. John B. Kennard.

Suit by the appellee in trespass to try title to recover the east half of the J. D. Parker pre-emption for one hundred and sixty acres of land. Appellee alleged that he was owner in his own right of the east half of the Parker survey, and that he was ousted of his possession on the 6th day of February, A. D. 1880, by appellant; he alleged damages at $200.

Appellants excepted generally to the petition, and specially that the land claimed by appellee was not definitely described; pleaded "not guilty," and specially that appellant owned what was known as the Beazley or Kilgore survey, and that the same did not conflict with the Parker; that appellee claimed the whole of the Parker survey of one hundred and sixty acres, and that the same begins at a point two hundred and thirty varas south of the southeast corner of the George Rose pre-emption survey for three hundred and twenty acres, which was older than the Parker survey,— the Rose having been made in 1853 and patented in 1860, and the Parker

surveyed in 1857 and patented in 1862; that the Rose was a well defined survey; that its northeast, northwest and southwest corners were all in the timber, and correspond with the calls in the patent; that the north boundary line, west boundary and most of the south boundary line passed through timber, and were according to the calls in the patent, courses, distances, etc., without ambiguity; that the Rose survey was well defined, and recognized both in the county surveyor's office and the general land office; that from the Rose survey there was no difficulty in ascertaining the beginning corner of the said Parker; that by making the Parker begin, according to the calls, at two hundred and thirty varas south of the Rose southeast corner, all the parties would get their *quantum* of land without conflict with the Kilgore, claimed by appellants, and other surrounding surveys. But that to make the Rose south boundary line extend from the southeast corner east eighteen hundred and sixty-two varas, instead of fifteen hundred and five varas, as called for by patent and recognized in general land office, would make the Rose too large by seventy or eighty acres, and cause conflict and confusion with surrounding surveys; that the true corner of the Parker was two hundred and thirty varas south of the southeast corner of the Rose, and that the south boundary line was fifteen hundred and five varas long, and not eighteen hundred and sixty-two, as contended for by appellant.

Appellee filed a plea denying matters specially set up in the answer, and alleged that the east and west division line of the Parker, owned by appellee, and the Beazley or Kilgore, owned by appellant, was "a line run at a point seventy varas west from Nogallas spring, north three hundred and thirty varas to the northwest corner of said Beazley or Kilgore;" that Parker field notes were correctly stated in petition, and same as given in patent were correctly stated; that a division line had been agreed upon between the parties for a period of twenty years; that fences had been erected, and that the middle of the lane was the recognized boundary between them, and that appellant, up to the time appellee purchased, claimed no land west of that line; and that appellee and those under whom he claimed had had actual possession of the land west of the division line for more than ten years before appellant unlawfully entered on same, and appellee claimed right to same by the statute of limitation of ten years, and prayed that he have possession and for damages, as in original petition.

The case was submitted to the court without the intervention of the jury, and judgment was rendered in favor of the appellee for the land as claimed by him.

The following sketch represents the Parker and Kilgore surveys as shown on the map of the general land office:

*W. A. Stewart, G. W. Granbury* and *Robb & Stevenson,* for appellant.

*J. R. Burnett,* for appellee.

WILLIE, CHIEF JUSTICE.— This suit grew out of a disagreement between the plaintiff and defendant as to the beginning corner of the J. D. Parker grant, under which the plaintiff claimed title to the land in controversy. This corner is described in that grant as being two hundred and thirty varas south of the southeast corner of G. Rose's pre-emption claim, and a mound was made by the surveyor to identify it, there being no timber convenient for bearing trees. The first line of this survey is described as running east nine hundred and five varas to a mound made by the surveyor seventy varas west from a spring called Nogallas spring.

The plaintiff below claimed that if the southeast corner of the Rose pre-emption could not be identified by any natural or artificial objects, from which the two hundred and thirty varas could be run to fix his beginning corner, the true method of finding it was to reverse the course of the first line, and begin at the second corner, which could be easily identified, and run nine hundred and five varas, and then establish the initial point of the survey.

The defendant, who claimed under the adjoining Kilgore survey, contended that inasmuch as the southwest corner of Rose was well defined and marked, as well as the two preceding corners and the lines between them, his (Rose's) southeast corner must be ascertained by running the course and distance called for between the latter and said southwest corner. This would locate the southeast corner of the Rose pre-emption some three hundred and fifty-seven varas west of the point where the plaintiff's method of finding his beginning point would place it, and give to the defendant the land in controversy.

There is no principle better settled than that where course and distance are in conflict with the natural or artificial objects called for in a survey, the former must yield and the lines of the land be determined by the latter. Stafford *v.* King, 30 Tex., 257; Hubert *v.* Bartlett, 9 Tex., 103.

It is also held in the same connection that the beginning corner of a survey is of no higher dignity or importance than any other; and where the natural object called for is found at any corner, the lines of the survey may be determined by commencing at that point instead of the beginning corner. Phillips *v.* Ayres, 45 Tex., 601.

If we apply this rule to the Parker tract we can commence at the second corner, which is identified by the spring, and ascertain the beginning point by reversing the course and running the proper distance. If we pursue the method contended for by defendant, we wholly disregard this natural object, and are governed by course and distance alone throughout the entire survey.

Whilst the method for which plaintiff contends seems to be the correct one under the rules of law already stated, in the present case it has additional reasons to support it.

It appears from the evidence that at the point where the defendant locates the Rose southeast corner there are no signs of the landmarks which the field notes call for at that point. These landmarks as called for are two pine trees, nine and twelve varas distant in opposite directions from the corner. But the surveyor found at the above point no marked trees, but only a cluster of pines in a different direction from that called for by the survey. But at the place where plaintiff says corner is established, timber is found corresponding to these bearing trees and at the proper distance, though their direction from the corner is the reverse of what it should be, which frequently happens, as surveyors testified on the trial.

Again, for a distance of one hundred varas from this corner, in the direction called for by the line of the Rose survey, running from thence, timber is found having old marks upon them, apparently made with a hack-knife. Though these marks are different from those made on the other lines of the tract, they were proven to be such as are made by surveyors. Moreover, the proof shows that by running the second line of the Parker grant from the second corner, as claimed by plaintiff, the proper direction and distance to his third corner, we find that corner to be well identified as called for in his patent.

There were other circumstances tending to show that plaintiff contended for the true location of the Rose southeast corner, and his own beginning point. The principal facts relied on, in addition to those already stated by defendant, to counteract the force of this testimony were the absence of marks upon trees when they might have been made upon the lines and at the corners contended for by the plaintiff. These can hardly be considered sufficient to overcome the proof offered to establish plaintiff's theory of the locality of the lines of the two surveys.

But if it were under ordinary circumstances sufficient for this purpose, the plaintiff's case was further supported by evidence of the declarations of the surveyor who originally made the Parker survey,

upon which it was patented (admitted without objection), that the lines claimed by plaintiff were those actually run by him.

Plaintiff further established by abundant testimony that the division line between himself and the defendant, as claimed by him, had been acquiesced in for many years by the different parties who had owned the respective tracts under which each of the parties to this suit claimed title.

The surveys were made and the original grantees took possession of their respective tracts in 1858. They built fences, and otherwise improved their lands near their mutual boundary, and kept a lane one hundred yards wide between these fences. The boundary, as claimed by plaintiff, ran lengthwise through this lane, and the spring was about the mouth of it. In the course of time these adjoining owners removed their fences towards the center of the lane, leaving it only thirty or forty feet wide. Both recognized the lane as their division line, and each cultivated to the fence on his side. The husband of the defendant, as far back as 1858 or 1859, lived on the Kilgore tract—the one owned by her,—and he respected this lane as the division line up to the date of his death. About 1873 or 1874, whilst one Harden was owning and occupying the east half of the Parker tract, and the present plaintiff the Kilgore, a surveyor ran their division line for them and fixed it where plaintiff claims it should be, and Harden moved his fence back to that line, and that fence was in the same place in 1879 or 1880.

These facts, we think, sufficiently establish an acquiescence on the part of the owners of the Kilgore survey in the division line as claimed by plaintiff to estop them from now disavowing it and denying the right of plaintiff to hold up to such boundary. Each tract of land passed into the possession of different owners, none of whom ever claimed beyond the established boundary. Parker sold to his immediate vendee whilst he was inclosed and in possession up to the lane. The original owner of the Kilgore tract did the same to his vendee. Parker's vendees sold under similar circumstances, the party in possession of the Kilgore tract standing by and asserting no right to any part of the land which the purchaser took possession of under the title derived through Parker. Davis, the husband of defendant, in his life-time laid no claim to the land west of the lane occupied by the owners of the Parker tract. Not until after his death, and some twenty years after the original establishment of this boundary line, did his widow, the present defendant, assert a right to the west of that boundary, and her claim was immediately repelled by the plaintiff and steps were taken by him

to recover up to the established division line. Hefner *v.* Downing, 57 Tex., 580. Acquiescence was thus fully proven, and the plaintiff properly recovered the judgment rendered below, and it is affirmed.

AFFIRMED.

[Opinion delivered February 1, 1884.] ·