SILAS COREY, Appellant, v. THE CITY OF FORT DODGE, *et al*,. Appellees.

**Injunction:** STREETS: LOST LINES: WHEN ESTABLISHED BY RECOG-

1  NITION. Where the original block and street lines of a platted tract are lost and cannot be identified, the fact that one owning a portion of the plat has for many years occupied and claimed up to a particular boundary which has been acquiesced

in by the the adjoining owner, is a strong circumstance tending to establish the correctness of the claim, and in the absence of other controlling circumstances the line so indicated should be taken as the true division line; and the same rule applies where the city is one of the adjoining proprietors.

Same: EVIDENCE. Evidence considered and held that under the facts of this case there attaches to the line, from long recognition, the presumption of correctness, which is not overcome by clear and satisfactory proof.

Estoppel: EFFECT OF LONG POSSESSION. Where a land owner with knowledge of the city takes possession of part of a street under an apparent claim of right, and without objection holds the same for a long period of time and makes valuable improvements thereon, the city is estopped to deny his title.

*Appeal from Webster District Court.*—HON. J. R. WHITAKER, Judge.

FRIDAY, DECEMBER 19, 1902.

ACTION in equity to restrain the defendant city from opening and improving a street upon land claimed by the plaintiff. The relief asked was denied by the district court, and plaintiff appeals.—*Reversed.*

*James Martin* and *Wright & Nugent* for appellant.

*M. J. Mitchell* and *A. N. Botsford* for appellees.

WEAVER, J.—The plaintiff is owner of a tract of land in the Northwest corner of block seventeen in Morrison & Duncombe's addition to the city of Ft. Dodge, and the litigation in this case arises over the location of the boundary between said block and the adjacent street on the north, known as "Second Avenue South" or "Walnut Street." The Morrison & Duncombe addition was platted in the year 1856. It embraced an eighty-acre tract according to government survey, and was supposed to measure 2,640 feet in length, north and south. If, however, we turn to the plat as recorded, and aggregate the measures of the widths of the streets and blocks as there

marked, we find an indicated length of 2,659 feet, while the testimony tends to show that by later surveys the extreme length of the eighty-acre tract, or entire addition, is but 2,632½. In other words, the eighty-acre tract lacks twenty-two and one-half feet of the length necessary to give all the blocks and streets their full platted measurements. The west range of blocks consists of Nos. fifteen to twenty-one, counting consecutively from south to north. The platted width of block seventeen is three hundered and four feet, and of Walnut street or Second avenue, bounding it on the north, seventy feet. The addition, while not quickly improved, was gradually brought into use, mostly for residence purposes. The purchasers of the several blocks, including block seventeen, evidently proceeding upon the theory that the several parcels were of full record measure, took possession of, inclosed, improved, and have ever since occupied them, to the full width called for by the plat. Block seventeen has been occupied by the plaintiff and his grantors for more than thirty years under -claim of right, based upon the records referred to and their several deeds of conveyance. During this period not only the owners of the property in controversy, but many others holding under like title or claim, have expended much labor and money in improving their premises upon faith of their legal right to hold their respective lots to the lines thus indicated, and with reference to the streets as actually used by the public. The necessary result of these conditions—the deficiency in the addition as a whole, and the improvement of the blocks to substantially their platted dimensions—has been to cast the shortage upon the streets.

Moreover, by reason, apparently, of the fact that the blocks both to the north and south of seventeen were first settled and improved, and that, in finding their respective corners, the owners of the blocks on the south measured from the southeast corner of the plat, while those on the

north measured from the northeast corner, the greater
part of such shortage now appears in Second avenue.    To
open and improve said street according to the plan and
claim of the city would not only eliminate the lawn or
yard now existing between the street and plaintiff's dwell-
ing, but compel a removal of a part of the building itself,
or, if we should adopt the finding of the trial court, and
make what is called the "Hess Survey" a governing fact
in the case, then the north wall of plaintiff's house will
stand flush with the south line of the street.    The Hess
survey, made about the year 1879, appears to have been
an attempt to mark the middle line of certain streets for
the purpose of laying sewers.    The minutes of the survey are
lost, and its chief value is in the fact that since the sewer
was laid the pipes have quite commonly been made use of
by the city as marks or monuments in locating or laying
out other improvements in that vicinity.    The claims made
by the parties to the suit, and the facts admitted by them
or established by the evidence, suggest the following ques-
tions:    (1) Is any portion of the land now held by plain-
tiff as part of block seventeen within the limits of Second
avenue?    And (2) if any part of the land so held by plain-
tiff is within the limits of the street as platted and dedic-
ated, has plaintiff obtained any right or title thereto which
he can assert against the city?

I.    The argument for appellees is directed entirely to
the second question, the affirmative answer to the first being
taken for granted.    Counsel say, "We find, then, without
controversy, that the title to Second avenue south, through
this addition, was vested in the city of Ft. Dodge as early as
1856," and then ask, "What had the city done or neglected
to do which now gives the paintiff the right to assert title to
nearly ½ of this public street?"    This assertion and inquiry
assume the truth of a very material proposition, which is
put in issue by the pleadings, and is by no means made
clear by the proof.    It is true that the dedication by Mor.

rison & Duncombe had the effect to vest the title to Second avenue in the public, but by what warrant shall we say that such avenue was seventy feet wide? Or if of that width, how are we able to determine that the seventy feet which the city now proposes to open and grade is the same seventy feet which the dedicators marked and designated for that purpose? The same plat which purports to assure the city a street of seventy feet assures the plaintiff and his co-proprietors a block of three hundred and four feet, and we look through the record in vain for anything which shows "without controversy" that plaintiff has possession of any part of Second avenue.

It is physically impossible that all the blocks and streets in the addition could have been given their full platted measure. The engineer who subdivided the original tract evidently overstated the width of some or all of the sub-divisions to the aggregate extent of twenty-two and one-half feet. No facts are shown indicating whether this mistake was one arising from the use of a shortened chain by the surveyor, thus introducing error into the recorded width of every block and street, or whether the entire shortage is chargeable to a mistake in a single measurement. If the original stakes or other monuments marking the block corners were in existence, they would, of course, in the absence of complicating circumstances, fix the boundaries without reference to the measurements indicated by a resurvey. But we have no such aid in settling this dispute. The location of the extreme northwest corner of the plat appears to be fairly well identified, and the southwest corner is not seriously questioned. Of the original location of the block corners intervening between the north line and the south line of the plat there is nothing to show, except as we may indulge in presumption or inference from the fence lines and corners to which the property owners have for many years held possession, and the acquiescence therein of the public. Without any ref-

erence to the doctrine of title by adverse possession, the fact that a party owning a tract of land has for many years

**1. STREETS: lost lines: when established by recognition.**  occupied and claimed up to a particular line as the true boundary, and the owner of the adjoining tract has silently acquiesced therein, is a circumstance strongly tending to show the correctness of the claim; and in the absence of other controlling circumstances, the line so indicated should be taken as the true division between the respective premises.   See subdivision one of the opinion of this court in *Miller v. Mills Co.*, 111 Iowa, 654, and authorities there cited.   It is there said, in reference to a recent survey which effects changes in lines long observed and recognized, "It] may well be doubted whether a survey of this character furnishes any better evidence of the line established by the government than the location of the hedge and fence by the parties making the division line, followed by long acquiescence therein."   The fact in the present case that one of the adjoining proprietors is the city or the general public can make no difference with the reason or application of the rule.

Starting, then, with the fact that plaintiffs in possession of no greater quantity of land than his title deeds from the original proprietors describe and purport to convey; that it is impossible to retrace the original survey of the addition upon the eighty-acre tract; that none of the origi-

**2. SAME: evidence.**  nal monuments, if any, marking the location of the block or street in dispute, has been preserved; and that no living witness is able to identify the place where such monuments were planted,—the further fact as to the extent of the possession held by the several owners and the public during the period since the dedication of the plat becomes of primary importance.

The evidence tends to show that improvements were begun upon block seventeen in the year 1869.   The witness Pearson in that year purchased the southwest quarter

of the block. He employed a surveyor to locate the corners, and testifies with great postiveness that he assisted in the survey and drove the stakes, that he improved and lived upon the property until the year 1882, and that plaintiff's fence corresponds with the block lines as then indicated. The witness Lincoln also testifies from personal knowledge that the fence between block seventeen and the street occupied the same location for some thirty years. It is shown, also, by other witnesses, and without material dispute, that plaintiff and his grantors had held to these lines from the first, and that until about the time of the commencement of this suit the defendant city has never asserted a right to any part of the ground within plaintiff's inclosure as being a part of the street. The existence of some mistake in the plat of the addition, and the impossibility of verifying therefrom the location and lines of the streets and blocks were discovered by the city as early, at least, as 1879; but such discovery was followed by no attempt to interfere with plaintiff's possession for a period of twenty years thereafter.

Under such circumstances, there attaches to lines so long recognized a presumption of correctness, which, if not conclusive, is to be overcome only by clear and satisfactory proof. Such proof is not furnished in this record, and we think the boundary which has heretofore been maintained between plaintiff's property and Second avenue south must be respected.

II. In view of the conclusion above indicated, we shall not attempt any extended discussion as to the effect of long possession of a part of a public street under claim of private ownership. It is not necessary here to decide whether, in the strict application of that doctrine, adverse possession of a public street by an individual may ever

1. ESTOPPEL: effect of long possession. ripen into a title. It is at least well settled that the public right to the use and occupancy of a street may be lost by estoppel. *Sanderson v.*

*Cerro Gordo County*, 80 Iowa, 89; *Smith v. City of Osage*, 80 Iowa, 84; *Simplot v. City of Dubuque*, 49 Iowa, 630; *Smith v. Gorrell*, 81 Iowa, 218; *Johnson v. City of Burlington*, 95 Iowa, 197; *Uptagraff v. Smith*, 106 Iowa, 385; *Incorporated Town of Cambridge v. Cook*, 97 Iowa, 599; *Crismon v. Deck*, 84 Iowa, 345; *Brown v. City of Cedar Rapids*, 117 Iowa, 302. The rule to be deduced from the foregoing cases is manifestly just. It tends to the quieting of titles and the discouragement of stale demands. If the city sees a land owner taking possession of a part of the street under an apparent claim of right, and, without dissent or objection, permits him to go on for a long period of years improving the same with valuable buildings, ornamenting it with trees, and otherwise converting it into a home which the successful assertion of public right will destroy or seriously impair, every principle of equity and good faith requires that such city be estopped to deny the title of the individual whom its laches has thus misled to his injury.

Without attempting to restate the facts, it is sufficient to say we think they call for the application of the principle thus stated, and that, if the city of Ft. Dodge ever had any right to claim as a public street any part of the premises now occupied by plaintiff, that right must be considered as abandoned, and the city estopped to now assert such claim.

The decree of the district court is therefore reversed, and plaintiff is awarded a decree in this court for the relief asked in his petition.—REVERSED.