STATE OF IOWA v. JOHN A. CREIGHTON REAL ESTATE & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 20, 1911.)

Nos. 2,938, 2,939, 2,940, 2,941, 2,942, 2,943, 2,944, 2,945.

(Syllabus by the Court.)

ESTABLISHMENT OF BOUNDARIES—ACQUIESCENCE.

Riparian rights and estoppel of state sustained for reasons stated in the opinion in State of Iowa v. Carr, 191 Fed. 257.

Appeals from the Circuit Court of the United States for the Southern District of Iowa.

In Equity. Suits by the John A. Creighton Real Estate & Trust Company and others against Charles R. Hannan and others, and the state of Iowa intervenes. From decrees for complainants, Jessie W. Hannan, grantee of defendant Charles R. Hannan, and the intervener appeal. Affirmed.

Jacob Sims (H. W. Byers, Atty. Gen., on the brief), for appellants.

Edgar H. Scott (Lodowick F. Crofoot, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and POLLOCK, District Judge.

SANBORN, Circuit Judge. These cases were commenced and proceeded to decrees in the same way as the case of Carr v. Hannan et al., entitled in this court, State of Iowa, Intervener, v. Samuel Carr, and Jessie W. Hannan v. Samuel Carr, 191 Fed. 257, in which the opinion has just been delivered. They involve the title to lands within the outer line of the oxbow, described in that opinion, which the Missouri river abandoned on July 8, 1877, but these lands lie north of the meander line of 1856 mentioned in that opinion. These cases present the issues whether or not an island sprang up on the Iowa part of the bed of the river where this oxbow was formed between 1851 and 1867, to which these lands accreted, and whether or not these lands were a part of Iowa's share of the channel abandoned by the avulsion of 1877, and these issues were submitted and were decided against the state and the defendants by the court below on the evidence in Carr's Case and stipulations of certain facts which did not substantially vary the proof upon these issues from that received in his case. The only substantial difference between Carr's Case and these is that the government title in the former, under which the complainants claimed, was to lands described in the patents according to the government survey of 1851 upon the Iowa side of the river, while in the cases now in hand the title from the government was to lands described in the patents according to the government survey in 1856 on the Nebraska side of the river. The lands here in controversy are in the northerly part of the tract inclosed by the oxbow and on the Nebraska side of the meander lines of 1851 and 1856. They are lands over which the river worked its way by the gradual degradation of the Nebraska shore and accretion to the Iowa shore between 1851 and 1877. In some of these cases the complainants hold title under patents to the government subdivisions according to the survey of the Nebraska shore, in some under conveyances from those holding patents to lands on the Iowa shore, of the lands in controversy which accreted to these Iowa lands, and in some under tax titles from the state of Iowa. This difference, however, between the original titles in these cases and those in Carr's Case is not material to a decision of the cases before us, because in each of these cases, as in Carr's Case, the complainants and their grantors had possession of the lands in controversy claiming title more than 20 years before the state gave notice of or made any claim to the lands, during this time they made costly improvements upon them, the state of Iowa levied taxes upon

them as the lands of the complainants and their grantors, and the latter paid these taxes. The controversy over the title in each of these cases is between the complainants and the state. Laying all other sources of title in the complainants aside, their possession is prima facie evidence of title in them, and, against the state's claim that this land was an accretion to its island, this possession is conclusive proof of title because the evidence has convinced that there was no such island. Against the state's claim that this land was in its part of the abandoned river channel, the long possession of the complainants and their grantors to the boundary lines they claim, together with the tacit acquiescence of the state therein, is strong proof that those boundary lines were correct, proof which must prevail in the absence of countervailing evidence (Corey v. City of Fort Dodge, 118 Iowa, 743, 747, 92 N. W. 704), and there is no convincing evidence in the record that those lines were wrong.

For the reasons stated more at length in the opinion in Carr's Case, therefore, and briefly because the record in each of these cases fails to convince that the court below fell into an error of law, or made any mistake of fact in its finding that the evidence before it failed to prove that the land in controversy, or any part of it, was ever an island in the Missouri river or accretions to such an island, or a part of the abandoned channel of the Missouri river between the thread of the stream and high-water mark on the Iowa side in 1877 prior to the avulsion, and because by the continued adverse possession of this land by the plaintiffs and their grantors claiming title for more than 20 years before the state made any claim to it, by the acquiescence of the state in this possession and by its levy and collection from them of the taxes upon this land as theirs during this time and by the expensive improvements they made upon it in reliance upon this acquiescence and taxation, the state is now estopped from asserting title to it in equity, and the decree below in each of these cases must be affirmed. It is so ordered.