## SCHIELE v. KIMBALL.

(Court of Civil Appeals of Texas. Galveston.
May 9, 1912. Rehearing Denied
Oct. 17, 1912.)

1. ADVERSE POSSESSION (§ 90*)—WHAT CONSTITUTES—PAYMENT OF TAXES.

Where persons purchased a stated number of acres in a given survey adjoining another, a payment of taxes on the number of acres stated is not sufficient as an element of adverse possession to land included in the adjoining survey, but regarded by such purchasers as a part of their tract, though at the time of such payment the parties intended that it should include taxes on the land in question.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 517–519; Dec. Dig. § 90.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR.

Where, on the uncontradicted evidence in trespass to try title, the plaintiff was entitled to a verdict, the fact that the peremptory instruction was not based upon the right ground is harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

3. BOUNDARIES (§ 49*)—LOCATION—ESTOPPEL BY CONTINUOUS MAINTENANCE.

Where the owner of land in one survey recognized a certain line as the dividing line between his land and that located in another survey for over twenty years, and by his continuous acts of designation in building and maintaining a line fence all persons dealing with the land in the other survey have been led to believe that the line was as he located it, he is estopped to say that the line is located at another point, even though he made no agreement as to its location, or stated that the fence was the line.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 243–248; Dec. Dig. § 49.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Trespass to try title by Laverne F. Kimball against Louis Schiele. From a judgment for plaintiff, defendant appeals. Affirmed.

Love & Channell, of Houston, for appellant. Hutcheson & Hutcheson, of Houston, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by the appellee against the appellant to recover 110.38 acres of land in Harris county described in the petition by metes and bounds. In addition to the general allegation of title in fee simple, plaintiff specially pleaded title by limitation of three, five, and ten years. The defendant answered by general demurrer, general denial, and plea of not guilty, and specially pleaded limitation of three, five, and ten years, and by affirmative plea alleged title to the land and sought recovery thereof from the plaintiff. At the beginning of the introduction of the evidence, it was agreed by the parties that, if the land in controversy was on the Moody survey, the plaintiff was entitled to recover, and, if it was on the Duckworth survey, the title was in defendant, unless plaintiff had acquired title by limitation or

estoppel. After hearing the evidence the trial court instructed the jury to return a verdict in favor of plaintiff on his claim of title by limitation of five years, and upon the return of such verdict judgment was rendered in accordance therewith.

The record discloses the following facts: The Jacob Duckworth and the J. W. Moody are adjoining surveys located in Harris county. The Duckworth is the older survey. The Moody lies south and west of the Duckworth, and its field notes call for the south and west lines of the Duckworth for part of its north and east boundaries. The line in dispute in this case is the west boundary of the Duckworth. Appellant has a regular chain of title to all of the Duckworth survey except a tract of 50 acres in its northeast corner. Appellee has regular chain of title to all of the land on the Moody adjoining the Duckworth on the west. The evidence upon the issue as to the true location of the lines of the Duckworth is conflicting, but there is evidence sufficient to sustain appellant's contention that the west line of said survey as originally located is 386 varas west of the line claimed by appellee, and, as so located, the land in controversy is included within the boundaries of the Duckworth. The Duckworth survey was located in 1838, and patent therefor was issued in 1842. It contains 413 acres and in shape is a parallelogram; its width from east to west being 1,060 varas. In 1858 one Hemlein, who then owned the entire survey, conveyed to Andrew Zahn 50 acres out of the northeast corner of the survey. This 50-acre tract calls to begin on the east line of the Duckworth in the middle of Little Cypress creek, the southwest corner of a pre-emption survey granted to the heirs of Charles Bahr; "thence north, 970 varas, to the N. E. corner of the Duckworth on south line of the Settle survey; thence west, 295 varas, along the north line of the Duckworth on the south line of the Settle survey, to a post in the prairie; thence south, 940 varas, to a stake in the middle of Cypress creek, bearing trees two hackberries on the bank growing together at the roots, the upper or west one 5 in. in dia. mkd. $\frac{A}{Z}$ stands 3⅓ varas east of the line and about 6 varas north from the middle of Little Cypress creek. Thence down Little Cypress creek with all its meanders to the place of beginning." This 50-acre tract afterwards became known as the August Bahr 50 acres. Hemlein owned and occupied the remainder of the Duckworth survey a number of years. In 1888 appellant acquired title through Mrs. Fatche, a daughter of Hemlein, to all of the Duckworth survey, except the August Bahr 50-acre tract. The deed to appellant describes the land conveyed to him as follows: "363 acres of land out of the Jacob Duckworth survey of 413 acres situated on Little Cypress creek, about 27 miles N. W. from

the city of Houston. Beginning at a point in the middle of Little Cypress creek where the east line of Duckworth's upper survey crosses the same; thence south, 1,230 varas, to stake in prarie; thence west, 1,060 varas, to stake in prairie; thence north, 2,200 varas, to stake; thence east, 665 varas, to the N. W. corner of the August Bahr 50-acre survey; thence south, 940 varas, along the west line of said Bahr survey to its S. W. corner in the middle of Little Cypress; thence down Little Cypress with all its meanders to the place of beginning." There seems to be no dispute as to the exact location on the ground of the A. Zahn or August Bahr 50-acre tract, and, when appellant purchased and took possession of his land in 1888, he thought the east and west lines of the Duckworth were located where appellee now claims them to be. The state has sold and patented surveys on the east of the Duckworth based on the location of the east line of said survey as it is now claimed by appellee. One of these surveys, the Charles Bahr 320 pre-emption, was made prior to 1858, and is called for in the deed from Hemlein to A. Zahn conveying the 50 acres before described.

Appellant testified that, when he took possession of the land in 1888, there were no fences on it, but that he saw where Hemlein's fence had been on the west side of the land; that he did not know whether the fence was on the line or not, but he saw Hemlein had had a fence there, and he put his fence in the same place. In 1895 J. C. Hutcheson and I. B. Baker purchased from M. M. Levy and Joseph Lobit a tract of land described in the deed to them as containing 1,310.75 acres, and being the north part of the Moody survey. The field notes contained in this deed include all of the land between the west line of the Moody survey and the fence which appellant then had on what he supposed was the west line of the Duckworth. Before this deed was executed, Mr. Baker had the land surveyed for the purpose of locating the lines and obtaining an accurate description by which the conveyance could be made. In making this survey the west line of the Moody was located along the fence of appellant which then extended the entire length of the Duckworth. The iron stake called for in the field notes of this deed as the southwest corner of the Duckworth was placed at the southwest corner of appellant's fence as it was then located. Both Mr. Baker and Mr. Polk, who made the survey, are dead. Appellant was present when the line was run, and made no objection to its location along his fence, but he testified that he did not know for what purpose the survey was being made. His testimony in reference to the location of the line by Baker and Polk is as follows: "I saw him surveying around out there. I saw him out there with Mr. Polk. He was out there with Mr. Polk. He was surveying with Mr. Polk, and they were running

the lines. I don't know what lines they were running. They were going along my fence there. Mr. Ike Baker and Mr. Polk, when this land was surveyed, they surveyed it around by the side of my fence. I saw them doing it. I did not tell Mr. Baker that he was taking in any portion of my land in the Moody. I didn't know where the Moody was, and I didn't know where the Duckworth was. I don't believe I ever told the chainman or Mr. Baker or Mr. Polk when he ran along that line as the east line of the Moody that I had an acre of land that they were interfering with, nor where it was. I don't think I told them I bought in the Duckworth, and I claim the Duckworth. I did not know where the line was. I made that fence line to suit myself, and it looks like it suited them. I did not know what they were doing. I was not an educated man."

In 1901 Hutcheson for himself and the executrix of the will of I. B. Baker leased to appellant for a term of 10 years the I. D. Steele survey which was owned by the Baker estate and Hutcheson, and situated just north of the Moody. The west line of the Duckworth which extends north of the north line of the Moody forms a portion of the east boundary of the Steele. As before said, appellant, when he built his fence many years ago on what he supposed was the west line of the Duckworth, extended the fence the whole length of the survey, and, when he leased the Steele in 1901 with the consent of Hutcheson, he inclosed with the Steele a part of the Moody survey. In making this inclosure he joined the fence which he placed on the Moody and Steele with his fence on the west side of the Duckworth. Shortly after renting the Steele to appellant, Hutcheson leased the land owned by himself and Baker on the Moody survey to Allen & Davis for a term of six years. The lessees under this lease in inclosing the land conveyed thereby joined their fence with appellant's fence at its southwest corner, and appellant's fence was used to inclose the land on the east. No objection was made to this by appellant, and he did not then make any claim to any land west of his fence. Allen & Davis, as tenants of Hutcheson, held actual exclusive possession of the land in controversy under this lease for more than six years prior to the filing of this suit. During all of this time Hutcheson rendered and paid the taxes each year upon 1,534¾ acres of land on the Moody survey. He owned two tracts on the Moody, the one conveyed to Baker and himself by Levy and Lobit, which includes the land in controversy and calls for 1,316.75 acres, and another tract conveyed by the same parties, the deed to which calls for 159½ acres. The evidence shows that the quantity of land actually embraced in the field notes of these two deeds is 319.88 acres in excess of the quantity called for in the deeds. In March, 1909, J. C. Hutcheson, James A. Baker, and W.

B. Chew purchased the I. B. Baker interest in the land conveyed to Baker and Hutcheson by Levy and Lobit by the deed before mentioned, the field notes of which include the land in controversy. In June, 1910, appellee purchased from Hutcheson, Baker, and Chew a portion of the tract conveyed to them by Levy and Lobit, including the land in controversy.

The evidence conclusively shows that, when Hutcheson purchased from the Baker estate, he purchased with reference to the west line of the Duckworth as fixed and established by appellant's fence. He was familiar with the situation as it appeared, had often been on the place, knew that the fence had been there for a number of years, and that appellant recognized the fence line as the line of the Duckworth survey, and in the many transactions and conversations that had taken place between them no intimation was ever given him by appellant that the line was elsewhere, and Hutcheson had no idea that there was any doubt as to the correct location of the line. The situation was exactly the same when appellee Kimball purchased, and there was nothing to indicate to him that the line was elsewhere than where it had been recognized by appellant for 15 or 20 years. Thus matters stood until July, 1909, when R. H. Barrow, a surveyor who candidly admits in his testimony that he was engaged in the business of making surveys for the purpose of discovering vacancies and obtaining patents therefor, made a survey of the Duckworth according to which the east and west line of that survey as they had been recognized by the state and the owners of the Duckworth for 50 years were 386 varas east of the true lines of said survey as originally located. The Land Office accepted his survey, which shows a vacancy 386 varas wide between the Duckworth and the surveys on the east. This vacancy was patented to Barrow and was purchased by appellee, who thereafter moved his west fence 386 varas further west to the line fixed by Barrow and took possession of the land in controversy, whereupon appellant brought this suit to recover same.

[1] We think the trial court erred in the conclusion that appellee had acquired title to the land in controversy under the five-year statute of limitation. All of the requirements of said statute necessary to perfect appellee's title thereunder were shown except the payment of taxes. The evidence shows that appellee's grantors rendered and paid taxes on 1,534¾ acres of land on the Moody survey. At the time of this rendition and of the payment of the taxes, they thought the land in controversy was in the Moody, and was included in the land rendered for taxes, and in paying said taxes they intended such payment to be upon this land. It seems to be settled that this cannot be regarded as payment of taxes upon any land not on the

Moody survey. Dutton v. Thompson, 85 Tex. 118, 19 S. W. 1026; Hoen v. House, 31 S. W. 83; Hull v. Woods, 14 Tex. Civ. App. 590, 38 S. W. 256; Spence v. Johnson, 3 Tex. Civ. App. 627, 22 S. W. 1042. We have already found that the evidence was conflicting upon the issue of whether the land was on the Moody or the Duckworth survey. If it is in fact on the Duckworth, under the authorities above cited, there was no payment of taxes thereon by the appellee's vendors, and no title was acquired by their adverse possession of five years.

[2] While we cannot agree with the learned trial judge that appellee was entitled to a verdict on his plea of limitation, we are of opinion that, upon the uncontradicted evidence, no other verdict than one in his favor could have been properly rendered, and the fact that the peremptory instruction to the jury was not based upon the right ground is immaterial.

[3] We think upon the evidence before set out appellant should be held estopped as a matter of law from now claiming against appellee that the west line of the Duckworth is not located where he has recognized it for the length of time shown by the evidence, and has by his own continuous, unmistakable acts of designation and demarcation led all persons dealing with land upon that portion of the Moody survey adjoining the Duckworth to believe said line to be located. It is true that no agreement is shown as to the location of the line, and no statement by the appellant that his fence was on the line. But his acts in placing and keeping the fence there through all these years, in not questioning the location of the line by Baker, in recognizing the claim and possession by Hutcheson and those holding under him of all of the land west of said fence, when such acts are shown to have misled others into purchasing the land in controversy, are just as potent to estop him from now asserting that the line is located so as to give him title to the land as any agreement or declaration made by him would have been. As said by the Supreme Court in the case of Hefner v. Downing, 57 Tex. 580, this is not a case in which a party has been simply silent when he ought to have spoken, but a case in which by his own act he has misled others, to their injury, and the fact that he acted in ignorance of the true location of the line is, we think, immaterial. We think the principles announced in the following cases justify the conclusion that the facts before set out compel the finding that appellant is now estopped to claim the land in controversy as a part of the Duckworth survey. Hefner v. Downing, 57 Tex. 580; Davis v. Smith, 61 Tex. 23.

It follows that the judgment of the court below should be affirmed and it has been so ordered.

Affirmed.