588

## BALLARD v. STANOLIND OIL & GAS CO.
### No. 7635.

Circuit Court of Appeals, Fifth Circuit.
Dec. 10, 1935.

Robt. B. Keenan, of Los Angeles, Cal., and Kirby Fitzpatrick and E. L. Wells, both of Houston, Tex., for appellant.

Carlton R. Winn, of Dallas, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

The suit was in equity over a narrow strip of oil land, containing 4.17 acres. It was brought by plaintiff, an oil company, against defendant, a land surveyor, to quiet title and remove the cloud which defendant had cast on plaintiff's title and possession by obtaining leases from plaintiff's remote grantors to the strip by assuring them that the land they leased him

was not included in their prior lease under which plaintiff claims.

Plaintiff pleaded that by mesne conveyance it was the owner of oil leases on and that it was in possession of a solid block of land consisting of sixty acres out of the Hathaway and Hooper surveys. It alleged that it had acquired this land from one Skipper, who in turn had obtained it by two leases, each executed on April 28, 1930. One, from Harley and wife, to 60 acres out of the Hooper survey, called for its south line to be Arthur Christian's north line. The other, to 104 acres more or less, was from Arthur Christian and others. It purported to be out of the Henry Hathaway survey, and called to begin at its northeast corner. Plaintiff pleaded · that the north line of the Hathaway was one and the same line with the south line of the Hooper, and the north line of the Christian lease was one and the same line with the south line of the Harley lease. It further alleged that it had taken possession of and was developing these two tracts when on April 3, 1933, Christian and wife, and on January 6, 1934, Leak and Hurst, Skipper's grantors, purported to lease to the defendant as a part of the Hooper survey the strip of land in controversy. Defendant, after obtaining a permit to drill on the land, had proceeded to drill on it, and when stopped by an injunction from the federal court, had drilled to about 1,600 feet and had expended in connection with the drilling some $4,339. He therefore, in addition to answering and filing a cross-petition in the suit, prayed that if it went against him, he have judgment for his drilling expenses.

Defendant's claim, as made consistently throughout all the controversy, in the court below and here, is this: That the strip in question is actually located in the Hooper survey. That the common grantors, record owners in the Hathaway survey, acquired title to and owned the strip in controversy only by limitation. That though by their lease to plaintiff's grantors they did intend to convey the strip, they, by describing the granted land as in the Hathaway survey, confined the grant to that survey. That they were therefore free to and they did convey to him by their lease a good title to the minerals in the strip.

If defendant is right in his contention, the situation will be greatly different from what plaintiff and its grantors had all along, before this controversy arose, supposed it to be. Instead of having, as they had without doubt intended to do, granted to Skipper by their first lease all of the land they owned up to their north boundary, grantors find themselves still owners of a part of it by a limitation title they never before asserted as such. Instead of having as it had supposed it had, a solid block of land, composed of two tracks in the Hathaway and Hooper surveys, plaintiff finds itself holding two separated parcels with a thin wedge driven between. Plaintiff therefore insisted below, and insists here, that while viewed simply as a boundary suit the evidence is overwhelming in its favor that the land is in the Hathaway and not in the Hooper survey, questions of boundary aside, it should have a decree, because the instruments in its chain of title fairly construed in their own light, in the light of other instruments to which plaintiff's grantors are parties, and in the light of their actions, include the land in question. It insisted too, that defendant is a disturber and a willful trespasser; that his expenses for drilling on the disputed strip had been litigiously incurred, and were of no benefit to plaintiff; that he is without equity for their reimbursement.

The District Judge agreed with plaintiff on all points. He filed full conclusions of fact and law. In these he gave controlling influence to an old fence called for in some of the instruments, and shown to have been long on the ground. He thought this the best evidence the case afforded after nearly one hundred years from the making of the original surveys, as to where their true boundary line was. He thought, too, that the parties having definitely called for the fence in some of their deeds, having always treated it as their boundary line, and having undoubtedly intended to convey up to it, had in law done so, whether the fence was or was not on the original survey line. Definitely then, rejecting defendant's contention that the strip in question was in the Hooper, rather than in the Hathaway survey, and finding with plaintiff on that point, he further found that the question which survey the land lay in was immaterial, for that the instruments under which plaintiff claimed, in law embraced and carried title to the strip, in whichever survey it lay. He found, too, that defendant was not a good-faith im-

prover, but a willful trespasser and disentitled under Guffey v. Smith, 237 U.S. 101, 119, 35 S.Ct. 526, 59 L.Ed. 856; Houston Production Co. v. Mecom Oil Co. (Tex.Com.App.) 62 S.W.(2d) 75, to recover his drilling expenses.

■ We have carefully examined the record and have reviewed the findings in its light. We find nothing there which would warrant us in overturning the findings or the decree. Plaintiff was in possession of the property when defendant obtained his lease from the common grantors, under circumstances warranting no other conclusion than that it, and the parties to the instruments it held under, had intended to grant and receive the property in question. Some of the instruments contained field notes definitely tied to the old fence. Others, to objects on the ground, conforming to the fence. What latent ambiguity, if there was any in the references to the Hathaway survey, what uncertainty there was as to intention was overcome by the definite references in some of the instruments to fence and branch. In such circumstances, in the face of long possession and claim to a line marked by fence and by occupancy to the fence, a heavy burden rested upon defendant to show that instead of this strip being in the Hathaway survey, and instead of the common grantors claiming it to the fence line as record owners of the Hathaway, it was in the Hooper survey and the Hathaway owners were claiming it only by limitation. Schiele v. Kimball (Tex.Civ.App.) 150 S.W. 303.

Plaintiff assumed the burden of fixing the fence as the boundary line between the owners in the two surveys, and of establishing by its surveyors that it was on the original survey line. The defendant, controverting this, undertook by calls for other surveys to show the contrary. Neither plaintiff's nor defendant's surveyors found any original marked tree or object. Plaintiff's surveyor did not claim to have done so. Ballard did indeed say that he had dug up a buried old red oak stump at a point where, if the line had been located as he located it, a red oak tree, called for in the original field notes, would have been found. This, like a great deal of the other hypothetical evidence of both surveyors in the case, is merely surmise and speculation. Besides, the District Judge heard all the witnesses orally and the greatest weight should be attached to his finding that the stump Ballard found was not an original bearing tree.

■ The purpose of a resurvey is to trace the footsteps of the original surveyor. When the marks of his footsteps are found, they control. When they cannot be found, old use and occupancy, old recognition, must suffice. Neither the evidence of plaintiff nor that of defendant reconciles all of the original calls. The evidence of each was fairly consistent with the theories each adopted. Each in reconstructing the survey according to his theory, and making unconforming calls yield to that theory, did a fairly good piece of reconstruction, but neither method did nor could find the original marked lines. Without the fence and the occupancy to fix the original line, the true location of it would be left in great uncertainty and obscurity. With that evidence, whether the fence be viewed as a boundary line established by acquiescence, or as evidence of where the old line truly was, we agree with the District Judge that the boundary line between the surveys may and should be fixed by it. Schiele v. Kimball, supra; Anderson v. Atlantic Oil Producing Co. (Tex.Civ.App.) 83 S.W.(2d) 418; Note 69 A.L.R. 1491; Davis v. Smith, 61 Tex. 18. But if it be considered that the evidence is not sufficient to fix or determine this as the true boundary line between the two surveys, either as originally run or as fixed by acquiescence, we think it clear that the court was right in finding that in view of the instruments and acts of conveyance of the land in question, with which the record is replete, plaintiff must be held to have the title of the common grantors to the strip in question, and an equity to protect that title against its clouding by releasing, as here. It is not, it cannot be disputed that the grantors believed, until defendant purported to discover that the case was different, that the lands they owned were only in the Hathaway survey, and that the fence marked the boundary line between them and the adjoining survey. They did not, until defendant's "discovery" claim any land in the Hooper survey. They claimed to the fence line as in the Hathaway survey. In the lease under which plaintiff holds, they declare that it was their intention to include in the lease "all lands owned or claimed in the said survey." It has been

decided in this state that a cover-all clause of this kind, under circumstances similar to those here, may be looked to to complete and perfect the description in an instrument to make it carry out the intent of the parties. Sun Oil Co. v. Burns (Tex.Com.App.) 84 S.W.(2d) 442, 444; Sun Oil Co. v. Bennett (Tex.Com.App.) 84 S.W.(2d) 447; Gulf Production Co. v. Spear (Tex.Com.App.) 84 S.W.(2d) 452; Smith v. Westall, 76 Tex. 509, 13 S.W. 540.

■ Appellant argues that plaintiff did not plead boundary by estoppel, nor did it sue to reform the instruments under which it holds, and therefore it is held to proof of the original boundary.

We think appellant misapprehends the nature of plaintiff's case and the effect of the evidence. The suit in equity pleaded the instruments under which plaintiff claims, and that by virtue of those instruments plaintiff is the legal and equitable holder of an oil and gas lease upon the land in controversy. It pleaded that the lease in accordance with its terms and provisions and its field notes, covers all the land owned by the lessors in the Hathaway as well as all land owned or claimed by them in adjoining surveys, contiguous to and forming a part of the land covered by the field notes, whether situated in the Hathaway or the Hooper. Under that pleading, it was entitled to prove, as it did, and recover on the proof of boundary by acquiescence, and to prove and recover on the proof that its grantors had claimed as in the Hathaway survey, the land in controversy.

■ Looking to the finding that defendant had entered litigiously and was therefore not entitled to be reimbursed his expenses, we are not prepared to, we do not, find that in every case one who enters upon a tract of land and drills it, knowing that there is an adverse claim to it, is by that knowledge alone prevented from being an improver in good faith so as to be denied expenditures he has made believing in his title, which have enriched the owner of the land. There

may be cases where, in order to protect from depletion property one owns, or in good faith thinks he owns, it is necessary to enter and drill. A general rule which would put persons to the alternative of standing by and watching their property disappear, or of drilling at the peril of enriching another, may not, we think, be supported. But there is no proof here that in a regulated field like this, there was any necessity to enter upon the property to save it from drainage. Besides, the claim asserted here is not the kind of good-faith claim equity looks to and protects. This is not a claim put forward by owners of land to protect themselves from drainage. This is a claim put forward by a holder under plaintiff's remote grantors upon the claim that he had discovered this unknown interest, and his assurance to plaintiff's grantors that it did not conflict with their prior lease. In short, this was from the beginning a speculative claim. It was put forward and pressed by defendant against plaintiff with the knowledge that if plaintiff owned the strip the drilling of the well could not inure to its benefit, while if defendant did, no emergency required his entry on the land until his title had been established. Defendant could and should have tried the question of his title first. Having forced the issue by entering upon the ground and drilling, he cannot complain if, having lost the issue, he is not permitted to burden plaintiff, who at all times has opposed his entry with the unprofitable expense defendant has gone to in his futile effort to drill. Liles v. Thompson (Tex.Civ.App.) 85 S.W.(2d) 784, 785.

None of the cases cited by appellant are helpful to him here. The case of Gulf Refining Co. v. United States, 269 U.S. 125, 46 S.Ct. 52, 70 L.Ed. 195, on which he mainly relies, did not involve a claim, as here, for expenses of drilling an uncompleted well. It was for an accounting, under article 501, Civil Code of Louisiana, for oil and gas actually removed from the land.

The decree is affirmed.