## BASS et al. v. DAVENPORT et al.

### No. 3170.

Court of Civil Appeals of Texas. Beaumont.

May 8, 1939.

E. A. McDaniel and R. M. Bounds, both of McAllen, and L. R. Brooks, of Rio Grande City, for appellants.

H. Davenport and J. T. Canales, both of Brownsville, H. P. Guerra, Jr., of Rio Grande City, John A. Pope, Jr., of Laredo, J. W. Timmins, of Dallas, and Strickland, Ewers & Wilkins, of Mission, for appellees.

COMBS, Justice.

This case was transferred to us from the San Antonio Court of Civil Appeals by orders of the Supreme Court. It was filed in the Seventy Ninth District Court of Starr County, Texas, by A. M. Kelsey Bass, joined by her husband, J. P. Bass, and complaining of numerous defendants, all of whom were dismissed except Domingo L. Garza, F. Davenport, Luther Blanton, Myrtle Blanton, Sun Oil Company, H. H. Roberts, R. G. Bone, M. L.

McGaugh, O. F. Strong, Frank Robert, M. M. Garcia, J. M. Gatling, Mrs. J. M. Gatling and Frank E. Osborn. The suit was in the form of trespass to try title, the only question involved being the true location of the north boundary lines of porciones 86 and 87 of the ancient jurisdiction of Camargo in Starr County, Texas. Porcion No. 86 was granted to Francisco X. Rodriquez on the 9th day of August, 1768, and porcion No. 87 was granted to Juan Antonio Flores Villareal on the 9th day of August, 1768. Said two porciones are part of the block of porciones numbered from 70 to 100, granted by Act of the Spanish king to various persons. Porcion 86 is 1,300 varas in width and porcion 87 is 1,050 in width facing on the Rio Grande river and extending north 25,000 varas. The appellant, Mrs. A. M. Kelsey Bass, is the owner of porciones 86 and 87, wherever located on the ground. Appellees own various sections of land which adjoin said two porciones on the north, Domingo L. Garza owning sections 164 and 565, appellee F. Davenport owning section 934, and the other appellees owning interests in section 923. The sections owned by the appellees are all junior grants so that the true location of the north boundary lines of porciones 86 and 87 is the only question for determination.

In 1852 the legislature of the State of Texas passed an act relinquishing the porciones covered by the ancient grant of Camargo to various persons to whom they were granted, their heirs and assigns. In pursuance of that act a surveyor, R. C. Trimble, surveyed all of the porciones from 70 to 90, inclusive, between the years 1853 and 1857. All except 86 and 87, here involved, were surveyed in 1853 and 86 and 87 were surveyed in 1857. All field notes call for adjoinders so that all the porciones consttiute a continuous block. The field notes of porcion 86 calls for its northwest corner to be in the east line of porcion 85 and the field notes of 87 call for its beginning corner, its southeast corner, to be the southwest corner of porcion 88.

It is without dispute that the lines of porciones 86 and 87 cannot be located on the ground from any objects, natural or artificial, called for in their field notes. It also appears without dispute that no corner of any of the porciones in the vicinity of these two can be located on the ground from any objects, natural or artifi-

cial, called for in their field notes. The Rio Grande river is a shifting stream which appears to have changed its channel a number of times in the vicinity of these surveys, and the river corners of all of the surveys have long since been obliterated. The interior corners, natural and artificial, have also disappeared.

Appellants, who were plaintiffs in the court below, would locate the north boundary line of porciones 86 and 87, which they own, as reconstructed on the ground by their surveyor, E. M. Card. The testimony of Mr. Card shows that he made extensive surveys of a block of the porciones, including 86 and 87, here involved. The field notes of porcion 82 call for its west line to cross the Rio Grande City-Brownsville Road and Sauz Creek (now Los Almos Creek) simultaneously at 3,270 varas from the beginning corner on the Rio Grande river. Mr. Card testified that he definitely located that point and from it, using course and distance and certain objects which in some instances fit the field note calls and other did not, he located certain lines of the intermediate porciones from which he surveyed porciones 86 and 87, here involved, placing their north lines substantially as contended for by the appellants. By another method he began on the west line of porcion 85 at the intersection of that line with the Rio Grande City-Corpus Christi Road, as called for in its field notes. He deducted from the total length of the line, as called for in the field notes, the distance from the Rio Grande River at which Trimble called to cross said road, and so by course and distance from that point established the northwest corner of porcion 85, and from there, using course and distance, he established porciones 86 and 87 approximately as contended for by appellants. The west line of porcion 85 also called to cross the Rio Grande City-Brownsville Road and Mr. Card testified that measurements show that Trimble's field notes contained an error of 3,107 varas in giving the distance between the Brownsville Road and the Corpus Christi Road.

Appellants further showed that in 1893 Jno. P. Kelsey, the father of appellant, Mrs. A. M. Kelsey Bass, from whom he deraigned title, fenced porciones 86 and 87, here involved, placing the north fences on the location here contended for by appellants as the true north lines of said porciones. Said fences have ever since,

and are now, maintained in said location, and said porciones as so fenced have at all times been used by appellants, and their predecessors in title, for ranch purposes. A number of adjoining property owners, including the appellee Garza, have from time to time joined their fences to the Kelsey fence. In fact appellee Garza in the early 1920's leased from Mrs. Bass a portion of the pasture land south of the fence, and now claimed by him, and paid her rent on it, giving up the possession when she requested him to. For a period of 45 years, and in fact up until about the time this suit was filed, all adjoining property owners have recognized the Kelsey fence as marking the true north boundary lines of porciones 86 and 87. In fact it appears there was no contention or claim to the contrary until about the time this suit was filed in 1932.

Appellees would locate the north boundary lines of porciones 86 and 87 as reconstructed by their surveyor, J. H. May. Mr. May also began at an intermediate point in a line of porcion 85, but he began in the east line, that is, the common line between 85 and 86, where he contends said line crosses the Corpus Christi Road, which is called for in the field notes of porcion 85 but not called for in the field notes of 86, and reconstructed porciones 86 and 87 by course and distance. He also surveyed from a point in the west line of porcion 88, a point called for in the field notes of said porcion but not called for by the field notes of 87, said west line of porcion 88 being a common line with the east line of No. 87, and by surveying from that point by course and distance he reconstructed porciones 86 and 87. Following said two methods, Mr. May located the north boundary lines of porciones 86 and 87 approximately 4,200 varas south of the location contended for by appellants, and at the location contended for by appellees as the true locations. Such location would still leave more than the acreage called for in the patents of said porciones. But it would make the adjoining junior surveys on the north, owned by appellees, take something more than 1,500 acres of land located within the appellants' fences and claimed by them as a part of porciones 86 and 87.

The case was tried before the court without a jury and he entered judgment for appellees, defendants in the court below, fixing the boundary lines as contended for by them.

## Opinion.

Here we have an unusual boundary case, where because of the constant shifting of the Rio Grande river and the consequent impossibility of locating any beginning corner, and the complete absence of objects, natural and artificial, called for by the original surveyor, Trimble, and the obvious inaccuracy of the measurements set out in his field notes, it is impossible to trace the footsteps of the original surveyor. An examination of the testimony of the two surveyors clearly demonstrates that fact. Each surveyor doubtless made accurate measurements and each by measuring from a point of his selection on the lines of adjoining surveys, and by following calls for course and distance, reconstructed the porciones with different results. The beginning points used by each surveyor were in every instance an intermediate point, a road crossing. No one contends that a corner of any survey in the vicinity could be definitely established as a beginning point. One result is as apt to be right as the other, and it is equally probable that both are wrong. So the testimony of neither surveyor was of any probative force whatever in fixing the true location of the disputed boundaries. The porciones in question are more than 25,000 varas in length. A number of measurements between intermediate objects called for in Trimble's field notes on other surveys showed errors of many thousands of varas. And there is ample evidence that his measurements were highly inaccurate, a fact which is clearly demonstrated by noting that the surveyors each followed Trimble's calls for course and distance in reconstructing porciones 86 and 87, but arrived at different results simply because one surveyor started from one point in adjoining line, as called for by Trimble, and the other started from another point on another line of the same survey, also called for by Trimble.

So, it is our view that the only testimony in the record which tends to fix the true location of the boundary lines in question is the evidence of the fencing by appellants, and long recognition of the line as fixed by their fences. For more than 45 years these fences have been maintained and have been recognized by adjoining property owners as marking the true boundary. Such long use and recognition it seems to us offers the best evidence, and in fact the only available evidence, of the

true location of the line. Where time has erased the footsteps of the original locator so that the true boundary cannot be located from his field notes, then of necessity resort must be had to any evidence which meets the requirement that it is the best evidence of which the case is susceptible. Finberg v. Gilbert, 104 Tex. 539, 141 S.W. 82. And fencing and long continued use and recognition of the line on the ground may be looked to as evidence of the true location of the boundary. Weston v. Meeker, Tex.Civ.App., 109 S.W. 461; Lopez v. Vela, Tex.Civ.App., 200 S.W. 1111; Dunn v. Land, Tex.Civ.App., 193 S.W. 698; Ballard v. Stanolind Oil & Gas Co., 5 Cir., 80 F.2d 588; Davis v. Smith, 61 Tex. 18; Corey v. City of Ft. Dodge, 118 Iowa 742, 92 N.W. 704. In the Ballard case, cited supra, Justice Hutchinson of the United States Circuit Court of Appeals, Fifth Circuit, dealing with a similar state of facts, in that the lines involved could not be located by survey, said [80 F.2d 590]:

"The purpose of a resurvey is to trace the footsteps of the original surveyor. When the marks of his footsteps are found, they control. When they cannot be found, old use and occupancy, old recognition, must suffice. Neither the evidence of plaintiff nor that of defendant reconciles all of the original calls. The evidence of each was fairly consistent with the theories each adopted. Each in reconstructing the survey according to his theory, and making unconforming calls yield to that theory, did a fairly good piece of reconstruction, but neither method did nor could find the original marked lines. Without the fence and the occupancy to fix the original line, the true location of it would be left in great uncertainty and obscurity. With that evidence, whether the fence be viewed as a boundary line established by acquiescence, or as evidence of where the old line truly was, we agree with the District Judge that the boundary line between the surveys may and should be fixed by it."

■ We do not mean to hold in this suit that the long continued use and recognition established the disputed boundaries on the principle of estoppel. There were perhaps certain elements lacking, at least as to some of appellees, to invoke that rule. What we do hold is that the undisputed evidence of fencing and occupancy of the land by appellants and their predecessor in title, and the general recognition of the line as so openly fixed by them and by all property owners affected for a long period of years, supplied the best evidence, and in fact the only evidence of probative value, as to the true location of the disputed boundaries. And so the evidence conclusively established, as a fact, their true location to be as marked by the old fences.

■ The rule we have here applied, although seldom invoked by the facts in boundary cases, is a sound one. In the first place, it has evidentiary value because it is a reasonable inference that when the fences were built the marks left on the ground by the original locator were still visible and also that persons then living had first hand knowledge of the true location of the line, and all land owners affected knew or had the means of ascertaining the true location. But there is also a second consideration which we think strongly supports the rule. Sound public policy tends to support a rule which would uphold the location of boundaries as established by long acquiescence of the land owners affected. Reason and common sense suggest that rights which have become adjusted to a boundary location long marked by fencing and recognized and openly and uniformly acquiesced in by all concerned, should not be disturbed, in the absence of clear proof of a true location different from that previously acquiesced in.

Appellees advance the proposition that to sustain appellants' contention as we have done above is in practical effect to award to them 1,500 acres of the public domain simply because their predecessors in title fenced and took possession of it, "Notwithstanding the well established doctrine that the State, as the sovereign can never be deprived of its title to any property by limitation, acquiescence, recognition, or estoppel." The legal proposition has no application here. The State is not a party to this proceeding and its rights are in no way involved. And in any case we have not based our holding upon the issues of limitation or estoppel urged by appellants. It is not necessary to pass upon those issues. The controlling question here, as we see it, is simply one of fact as to the true location of the boundary in question. Certainly, the true loca-

tion of the line as it was surveyed on the ground, wherever it may be located, is binding upon everyone.

This case appears to have been fully developed. It is accordingly ordered that the judgment of the trial court be reversed and judgment here rendered for appellants establishing the north boundary lines of porciones 86 and 87 as contended for by them.

We have withdrawn the original opinion filed in this case and rewritten it in order to correct certain fact references and to incorporate some additional matter. However, we have not changed any holding and it is of course not necessary for any motion for rehearing to be filed against this opinion.