**FARRELL & CO. et al. v. ARKANSAS FUEL OIL CO.**

No. 7908.

Circuit Court of Appeals, Fifth Circuit.

July 30, 1936.

Ben D. Clower, of Tyler, Tex., for appellants.

David B. Trammell, of Fort Worth, Tex., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, Arkansas Fuel Oil Company, brought this suit against appellants, Farrell & Co., Rhoads Drilling Company, and Roy Ashton, to quiet title and possession of a tract of land in Gregg county, Tex., situated about 13 miles west of Longview. The parties will be referred to hereafter as they appeared in the District Court. The bill alleges that plaintiff was in possession of the land and defendants were claiming two acres of it and were about to enter upon it for the purpose of drilling an oil well. There was a decree quieting title and possession of the land in plaintiff, but excepting certain portions that had been set aside to Will Pentecost and the Gulf Production Company by virtue of boundary line agreements, not material on this appeal, and removing a cloud upon plaintiff's title caused by the recording of deeds under which defendants claimed.

It was stipulated that both plaintiff and defendants claim under Bob Donaldson; that he had good title to the land either by deed or by limitation; and that he died

intestate. The exact date of Bob Donaldson's death is not shown, but it is certain it occurred some time between 1924 and 1930. It is also certain that he left as his sole heirs his wife, Genia Donaldson, and his two sons, W. H. Donaldson and London Donaldson. London Donaldson died before this suit was tried. The following facts are undisputed.

In 1888, Bob Donaldson acquired a tract of land of about 74 acres in Gregg county, Tex., from C. W. Hughey. The deed described the land by metes and bounds and as part of the L. B. Outlaw survey, about 13 miles west of Longview. The tract conveyed was rectangular in shape, approximately 1,288 feet in width from east to west by 2,685 feet in length from north to south. Its western boundary for about four-fifths of the distance from north to south was the eastern line of the Mary Scott survey, and the boundary of the other one-fifth to the south was the eastern line of the John Blair survey. In 1903, Bob Donaldson sold the north one-third of this land, containing 25 acres, to P. E. Barton, leaving him 49 acres of the original tract.

In 1912 or 1913, in settlement of a boundary dispute between Bob Donaldson and Will Pentecost, a narrow strip was taken off the original tract acquired from Hughey running parallel with and to the extent of the line of the Mary Scott survey. This left title and possession to about 43 acres of the original tract in Bob Donaldson, the southwest corner of which was an ell, containing about 4 acres, the western boundary of which was the eastern line of the John Blair survey. The land claimed by defendants is in this ell.

On November 16, 1917, G. E. Erwin executed a deed to Bob Donaldson and his wife for the same 49 acres, originally acquired from Hughey, left after the sale to Barton. How Erwin acquired a superior title to Donaldson is not clearly shown.

On March 29, 1924, Bob Donaldson and his wife executed a deed to their son, London Donaldson, for 10 acres of the land forming the southwest corner of their home tract, which included the land herein in controversy. The testimony of Genia Donaldson is to the effect that this land was never surveyed or marked out, was not fenced by London Donaldson, and her husband continued to cut wood from it.

After Bob Donaldson's death, on September 11, 1930, Genia Donaldson and her two sons, W. H. Donaldson and London Donaldson, joined by their wives, executed a mineral lease to B. P. Seay, covering the 49 acres described in the deed from Erwin to Bob Donaldson. By mesne conveyances plaintiff acquired this lease. The lease particularly described the land, recited it was in the Outlaw survey, and contained these clauses:

"For the purpose of calculating the payments hereinafter provided for, said land shall be treated to comprise 49 acres, whether it actually comprises more or less. It is the express intention to include all land owned or claimed by Grantor in said survey or surveys, regardless of the correctness of the description above set out."

"It is the express intention of Grantor to include herein all lands owned by them in the said L. B. Outlaw survey and/or adjoining surveys."

This lease is the basis of plaintiff's title.

Thereafter, on January 15, 1932, London Donaldson and his wife executed a warranty deed to Roy Ashton, covering the ell in the southwest corner of his land, particularly describing the property and reciting that it was part of the John Blair survey. This is the basis of defendants' claim.

The District Court found as facts: That it was the intention of the lessors in the Seay lease to lease 49 acres, which amount they were paid for, and it was the intention of the lessee to take a lease for that amount of land; that plaintiff's lease goes to the corners set forth in the lease, regardless of whether they take in part of the Blair survey or not; and that the field notes take in and cover that tract, notwithstanding it is difficult to otherwise identify the exact lines of the surveys on the ground.

Since the opinion does not seem to be reported, we quote the District Court's conclusions of law in full, as follows:

"The call for the corners of the land described in plaintiff's lease, which were actually fixed on the ground and can now be located, control over the call for the survey, and plaintiff's lease covers and includes the land within such boundaries, regardless of whether it is in the Outlaw Survey or not. This holding is in accord with Koenigheim v. Miles, 67 Tex. 113, 2 S.W. 81, by the Supreme Court of Texas To the same effect is Blount v. Bleker, 13 Tex.Civ.App. 227, 35 S.W. 863, by Judge

Williams. The rule applicable is very well stated in the following language from 14 Tex.Jur., p. 1003, Sec. 214:

" 'Where the premises are sufficiently described for purposes of identification, after eliminating some part of the description that is incorrect, that deed is read as if the mis-description were eliminated and effect is given to the remaining part of the description. Where the land is otherwise described with certainty, the maxim is falsa demonstratio non nocet, signifying that an erroneous description is harmless. Accordingly, it has been held that, the description being otherwise sufficient to enable the land to be identified, the deed is not invalidated by an incorrect designation of the county or survey wherein the land is situated, or by a recital incorrectly stating the area of the land conveyed, or of the tract out of which the land is granted, or by erroneous calls for boundary lines, or by a recital that the land is occupied by A whereas in fact it is shown to have been occupied by B. Other enlightening decisions are to be found in the reports.' 14 Tex.Jur. pp. 1003, 1004.

"On the other points urged, plaintiff is also entitled to judgment. It is very plain from the testimony that the lessors intended to lease to plaintiff's predecessor in title their entire tract of land containing 49 acres and they were paid for such an amount. After deducting the tract excluded by Bob Donaldson's agreement with Will Pentecost, testified to in the evidence, there will be left but 43 acres, and if defendants' contention is correct the lease would include but 39 acres. The intention to cover and include the entire tract was expressly set forth in a provision written at the time of the execution of the lease above quoted, and the tract claimed by the defendants has always, under the testimony, been used as a part of the original Donaldson tract. Under the case of Lauchheimer v. Saunders, 27 Tex.Civ.App. 484, 65 S.W. 500, which is directly in point, the clause above quoted is sufficient to vest the lessee with the oil and gas lease and leasehold title to the tract claimed by the defendants. See, also, Smith v. Westall, 76 Tex. 509, 13 S.W. 540, and the Texas Supreme Court case of Cook v. Smith, 107 Tex. 119, 123, 174 S.W. 1094, 3 A.L.R. 940."

There is considerable conflict in the evidence, but it is mostly as to the lines of the Outlaw, Blair, and Scott surveys.

There is no doubt that the lines of these surveys overlap, but that is not surprising as they were made about 1848 when the land had little value, was wild, and perhaps difficult to survey. Probably the surveyors contented themselves with merely projecting some of the lines, without taking the trouble to run them out on the ground. We consider a preponderance of the evidence justifies the findings of the District Court, and his conclusions of law are fully supported by the authorities cited. Cf. Ballard v. Stanolind Oil & Gas Co. (C. C.A.) 80 F.(2d) 588.

The record presents no reversible error.

Affirmed.

WALKER, Circuit Judge, concurred in the disposition of this case, but died before the opinion was handed down.