**ATLANTIC OIL PRODUCING CO. et al. v. HUGHEY et al.**

No. 1663.

Court of Civil Appeals of Texas. Eastland.
June 11, 1937.

Rehearing Denied July 9, 1937.

T. R. Freeman, Bromberg, Leftwich, Carrington & Gowan, and Margaret Clark, all of Dallas, Campbell & Leak, of Longview, and Wm. Hodges, of Texarkana, for plaintiffs in error.

Prentice Wilson, W. H. Sanford, O. F. Wencker, and J. W. Hassell, all of Dallas, for defendants in error.

LESLIE, Chief Justice.

The plaintiff M. B. Hughey instituted this suit in form trespass to try title to recover 3.04 acres of land in Gregg county, Tex., from the Atlantic Oil Producing Company, Byrd-Frost, Inc., Royal Petroleum Corporation, J. B. Stoddard, S. G. Delaney and wife, and Bert Kouns. J. Zeppa intervened, claiming an interest in the land under an assignment from Hughey. The Royal Petroleum Corporation and Bert Kouns were dismissed from the case. Other defendants answered by general demurrer, general denial, and pleas of not guilty. The trial was before the court and jury, and upon answers to special issues, judgment was rendered in favor of M. B. Hughey and the intervener Zeppa. Defendants prosecute error to this court.

Many errors were assigned and extensively briefed. The first assignments and propositions complain of rulings of the trial court (1) in refusing to give an instructed verdict in favor of the defendants on the ground that if the facts proved by plaintiff were true, the same would be insufficient to authorize the rendition of a judgment in favor of plaintiff; (2) refusal of the court to grant defendants a judg-

ment notwithstanding the verdict; and (3) for the further reason that the verdict does not support the judgment rendered. Along with these assignments (based on a statement substantially the same), consideration will be given to proposition No. 1 under assignment of error No. 3, complaining that the court erred in holding as a matter of law in the submission of issue No. 1 that the post oak tree mentioned therein should control and establish the southeast corner of the strip of land in controversy.

The leasehold mineral rights alone are involved. The following plat reflects the subject-matter of the controversy:

be referred to as in the trial court. Italics ours.)

Plaintiff seeks to recover this 3.04 acres as part of the M. B. Hughey 80-acre tract which is the east ½ of the original Hughey 160 acres in the Wm. McCurry survey. It is not claimed that the 3.04-acre strip was ever a part of the Outlaw tract to the south of the McCurry. The 3.04 acres is described as follows:

"Situated in the State of Texas, County of Gregg, and out of and a *part of the Wm. McCurry survey,* and particularly described by metes and bounds as follows, to-wit:

"*Beginning at a stake set for the north-*

The tract of land in suit is ABEG on the plat. The dotted line AJ indicates the line claimed by plaintiff to be the north line of the defendants' lease and necessarily the south line of the 3.04 acres of land. ABXJ is the strip claimed in plaintiff's original petition. (The parties will

*east corner of the L. B. Outlaw Survey, and the southeast corner of the Wm. Mc-Curry Survey,* from which stake a post oak stump bears south 5 deg. west 6 varas; Thence North 0 deg. 18′ east with the east line of said McCurry survey 31.8 vrs. to a stake set for the southeast corner

of the Magnolia Petroleum Company's M. B. Hughey lease out of the McCurry survey; thence north 89 deg. 36' west with the south line of said Magnolia-Hughey lease 520.6 vrs. to a stake set for the southwest corner of said Magnolia-Hughey lease; thence south 0 deg. 8' west 34.2 vrs. *to a stake set in the south line of the McCurry survey and the north line of the Outlaw survey; Thence south 89 deg. 52' east with the common line of said McCurry and Outlaw Surveys 520.5 vrs. to the place of beginning and containing 3.04 acres of land."*

The M. B. Hughey tract of 204 acres is out of the northeast corner of the original Outlaw survey, patented in 1847, under the following field notes:

"In Rusk District on the waters of Rabbit Creek near the Sabine River, beginning 1320 varas west and 380 varas north from the NE corner of J. Wilkinsons Survey, from which a post oak 8 inch diameter bears north 6 varas, and a hickory 10 inches diameter bears south 65 east four varas,

"Thence north at two thousand and sixteen varas *a post, from which a post oak 12 inches diameter bears south 5 west 6 varas, and a red oak 16 inches diameter bears north 17 east 8 varas,*

"Thence west at two thousand and sixteen varas, a post from which a red oak 18 inches dia. bears south 47 west 10 varas, and a black jack 12 inches diameter bears north 40 west 3 varas,

"Thence south at two thousand and sixteen varas a post, from which a hickory 6 inches diameter bears south 36 west three varas,

"Thence east at two thousand and sixteen varas the beginning. Bearings marked X."

The McCurry survey to the north and adjoining the Outlaw was patented in 1851 under field notes as follows:

*"Beginning at the NE corner of Jesse Bartlett assignee of L. B. Outlaw's 730 acres survey from which a post oak brs. S 5 W 6 vrs., a red oak brs. N 17' E 8 vrs.*

*"Thence West 1344 vrs. with the north line of said survey to a post, from which* a hickory brs. S 29' E 6½₀ vrs., a post oak brs. N 80 W 6.2 vrs.

"Thence N. 1344 vrs. to a post, from which a hickory brs. 50½ W 8 vrs., a post oak brs. N 41½ E 25 vrs.

"Thence E at 310 vrs. a branch 1344 vrs. to a post from which a post oak brs. S 44' E 3 vrs;

"Thence S. 1344 vrs. to the place of beginning. '

"Bearings marked X."

Obviously, the southeast corner of the McCurry and the northeast corner of the Outlaw survey is a common point, and the south line of the former coincides with the north line of the latter, running west from beginning point evidenced by *"a post, from which a post oak brs. S 5 deg. W 6 vrs., a red oak brs. N 17 E. 8 vrs."*

About April 24, 1869, J. B. Hughey, father of plaintiff, and W. W. Hughey acquired said 160-acre tract in the McCurry survey. After the death of J. B. Hughey and W. W. Hughey, their respective heirs entered into a partition of the 160 acres. This was September 13, 1912, and in that partition the west 88.4 acres of the 160 acres (so-called) was conveyed to J. B. Hughey and the other children of W. W. Hughey and the east half of the 160 acres was conveyed to S. P. Hughey, mother of plaintiff M. B. Hughey, and the other heirs of said J. B. Hughey. The east and west halves of this 160 acres were described by metes and bounds, calling for 88.4 acres each, although the general description referred to the whole tract as 160 acres. The partition left the heirs of J. B. Hughey owners of the east 88 acres in the McCurry and the 204 acres in the Outlaw surveys. The west 88.4 acres in the McCurry were thereafter sold to a man named Brittain who subsequently sold same to one Dickson. This west 88 acres will be referred to as the Brittain tract. As noted, the partition called for the 160 acres to be in the McCurry survey and to be bordered on the south by the north line of the Outlaw, etc.

After the patents to the McCurry and Outlaw surveys were issued in 1847 and 1851, respectively, calling for the southeast corner of the McCurry and the northeast corner of the Outlaw to be at a post witnessed by "a post oak brs. S 5 W 6 varas, a red oak brs. N 17 E 8 varas," no other conveyances were made (so far as shown by the record) involving a location or description of said northeast corner and north boundary line of the Outlaw survey until 1918, at which time said lands lying on both sides of the north line of the Outlaw had been acquired by the ancestor of M. B. Hughey.

With the view of acquiring the interest of his mother and brothers and sisters in the Hughey land in each of said surveys, plaintiff M. B. Hughey had same resurveyed in 1918 by J. C. Choice, a surveyor. In all the conveyances thereafter made by which the plaintiff acquired said land, or leased the same, the call for the disputed northeast corner of the Outlaw and the southeast corner of the McCurry is for *"a stake for corner from which a pine tree brs. north 9 feet."* Among the instruments of conveyance so designating the corners and adopting the Choice field notes, which M. B. Hughey employed that surveyor to make, are the following:

1. Deed from Mrs. S. P. Hughey to M. B. Hughey dated November 16, 1918, conveying her community interest in said tracts of land.

2. Petition of M. B. Hughey for partition in his suit against Sally Spinks, his sister, and others, dated November, 1918.

3. Judgment rendered in said suit December 11, 1918. Receiver appointed to sell said land.

4. Deed from M. L. Cunningham, receiver, to M. B. Hughey of said land dated December 11, 1918.

5. Deed of trust executed by M. B. Hughey to M. L. Cunningham, trustee, December 11, 1918.

6. Oil and gas lease from M. B. Hughey and wife to Bert Kouns, dated October 15, 1930.

7. Bert Kouns assigned to Magnolia Petroleum Company on February 11, 1931, lease on lands acquired by him in the McCurry survey.

8. Bert Kouns conveyed January 6, 1931, oil and gas lease on the 204 acres out of the Outlaw to J. C. O'Brien,

9. And the same thereafter came into the ownership of defendants (plaintiffs in error), by the same description.

With the title to the two contiguous tracts of land in M. B. Hughey, as above stated, he and his wife, on October 15, 1930, executed said oil and gas lease to Bert Kouns, calling also for the north line of the Outlaw and the south line of the McCurry to be a common line, and for the northeast and southeast corners of said surveys, respectively, to be a "stake 9 feet south of the pine."

The description of the tracts in the oil and gas lease is as follows:

"First Tract: All that certain lot, tract or parcel of land in Gregg County, Texas, being a part of the L. B. Outlaw headright survey, and out of the northeast corner of same;

*"Beginning in the northeast corner of the original survey, and at the southeast corner of the William McCurry headright survey, a stake for corner, from which a pine brs N 9 feet;*

"Thence south 950 vrs. with the east boundary line of the original survey to the northeast corner of a tract of land known as the William Clayton land, a stake, from which a gum brs. S 45′ W 9 feet;

"Thence west 1233⁹⁄₁₀· vrs. with said Clayton land to the east boundary line of a tract of land known as the Griffin tract, a stake for corner, from which a gum brs S 9′ W 36 links;

"Thence north 950 vrs. to the north boundary line of original survey, an iron stake for corner in an old field;

"Thence east with original survey 1233⁹⁄₁₀ vrs. to the place of beginning, containing 204 acres of land.

"Second Tract: Being a part of the William McCurry headright survey, located in the southeast corner of same;

*"Beginning in the southeast corner of said original survey, and at the northeast corner of the L. B. Outlaw Survey, same being the northeast corner of the first described tract, a stake, from which a pine bears N 9 feet;*

"Thence North 38 chains and 50 links with the east boundary line of said McCurry Survey, a stake in same for ———;

"Thence west 21 chains and 88 links a stake at corner of Brittain tract, from which a pine brs. N 48′ E 17 links;

"Thence south 38 chains and 50 links with said *Brittain land to the south boundary line of said McCurry survey;*

"Thence east 21 chains and 88 links with said line to the place of beginning, containing 80 acres of land."

■ The plaintiff M. B. Hughey, in making said conveyance to Kouns, conveyed his entire leasehold mineral interest in the land involved in this suit, whether it be located in the Outlaw or in the McCurry surveys. The lease stipulates: "It being the intention to include all land owned or claimed by lessor in said survey or surveys," and this provision has been

held effective for the purpose stated. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W. (2d) 442; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.(2d) 447; Gulf Prod. Co. v. Spear, 125 Tex. 530, 84 S.W.(2d) 452.

After thus parting with his title under the terms of said conveyance, it devolved upon Hughey to prove that he had reacquired the title to the 3.04 acres of land. As evidence of such reacquisition of title, he relies solely upon an agreed judgment rendered in a suit in which he was plaintiff and the Magnolia Petroleum Company was defendant. That judgment was rendered December 9, 1932, and omitting the portions in favor of the Magnolia, it is as follows:

"It is further ordered, adjudged, and decreed that plaintiff, M. B. Hughey, do have and recover of and from the defendant, Magnolia Petroleum Company all that land in the McCurry Survey described as follows:

"Beginning at an iron pipe in the southeast corner of Magnolia 89.6 acre tract, as described above, same being in east line of Wm. McCurry Survey;

"Thence in a westerly direction to the southwest corner of said Magnolia lease at the southeast corner of J. M. Dickson tract;

"Thence south to the original north line of the L. B. Outlaw survey, and south line of the Wm. McCurry;

"Thence east with the north line of said Outlaw Survey to the northeast corner and southeast corner of McCurry Survey, from which a P.O. marked X bears S 5 deg. W 6 vrs;

"Thence north with the east line of said McCurry Survey to beginning, containing 3.7 acres, more or less."

Since the lease from Hughey to Kouns, as well as the numerous other instruments above referred to, called for the *stake and pine* as marking what was then considered the *northeast corner of the Outlaw and the southeast corner of the McCurry,* and nowhere designated said corner to be evidenced by "a post from which a post oak 12 inches dia. brs. S 5 W 6 vrs., and a red oak 16 inches dia. brs. N 17 E 8 vrs." and does not even refer to a post oak or red oak mentioned in the patents, therefore, the material inquiry is, where does the oil and gas lease from plaintiff to Kouns, and Kouns to Magnolia locate the southeast corner (of Hughey's land in the McCurry) and the true south boundary line of that land conveyed or assigned to that company? The answer to this question is to be found in following the footsteps of the surveyor Choice, whose field notes were used in the Hughey lease to Kouns, and his assignment to the Magnolia, and not by locating the lines and corners as per field notes of the patent to such.

If the pine tree and stake referred to in the Bert Kouns lease could be definitely located on the ground, there could be no doubt that those objects (and not the original post oak) would fix the point intended by the parties in the oil and gas lease as the northeast corner of the Outlaw and the southeast corner of the McCurry and the same fact would fix the south boundary of the McCurry (Hughey land in the McCurry) and consequently the south boundary line of the 3.04 acres. This would be true although the corners thus established at the stake and pine might not coincide with the calls in the descriptions contained in the respective patents.

The survey by Choice was actually made and in such case the footsteps of the surveyor making same must be followed. Oliver v. Mahoney, 61 Tex. 610; Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304; Davis v. Smith, 61 Tex. 18, 21. In the first case the court said:

"Now, the line of the neighboring survey, instead of being where the surveyor supposed it to be, is three hundred varas to the eastward. Must we then move the line which was actually established, in order that it may coincide with the line called for? By no means. For when we have found the footsteps of the surveyor, we have found the great object of our search. We know where the line was actually established, and we have no further use for the rule, which is useful as a guide only in doubtful cases."

The stake and pine tree reflect the surveyor's intention at the time he made that survey, and since he nowhere in his field notes referred to the post oak (contended for by plaintiff) and it was not mentioned in the Hughey grant or lease to Kouns, the post oak is not determinative in locating the south boundary line of the 3.04 acres or the north line of the Hughey 204-acre tract in the Outlaw survey.

In Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, 318, our Supreme Court

said: "When the surveyor says a stake, it must be presumed that he means an actual stake, which is a very real object."

In Miller v. Southland Life Ins. Co. (Tex.Civ.App.) 68 S.W.(2d) 558, 562, it is said: "The fact that the iron stake placed at such corner has disappeared is unimportant for its location can be definitely fixed by the distance calls."

The survey by Choice was made about 67 years after the patents were issued. There is evidence that the oak tree was standing as late as 1932 or 1933. In making his survey Choice must have been in the vicinity of the oak and doubtless in close proximity thereto. Since he did not use either the post oak or the red oak, referred to in the patent, as locative objects in his survey, it is inferable that he did not find them on the ground in 1918, or did not know of their existence. If the oak was in fact standing in 1918 with the marks upon it as alleged and it was passed unnoticed by Choice, this circumstance at least indicates, or tends to prove, that in the resurvey of the lands the northeast corner of the Outlaw and the southeast corner of the McCurry were established at a point farther north than the post oak referred to by plaintiff. In fact, the evidence, without dispute, establishes that the distance of 950 (952) varas (called for in the field notes of the oil and gas lease) north of the well-established northeast corner of the Clayton survey reaches a point about 9 feet south from a pine tree or stump thereof. Hence, both course and distance as per the lease point to the correctness of the location of said stake or corner near the pine tree and Choice may have been influenced by course and distance from said well-established corner to place the stake ("from which a pine bears north 9 feet") at a point north of the post oak by 92 or 100 feet, as indicated by the defendants' testimony. Course and distance from the northeast corner of the Brittain tract also tends to prove the location of the disputed corner at the point evidenced by the stake and pine. In fact, Choice may have thought this point was the original northeast corner of the Outlaw and the southeast corner of the McCurry as per patent field notes, but that would be immaterial since the stake witnessed by the pine, if definitely located as called for in the lease from Hughey to Kouns, would control.

The immateriality of the post oak or its secondary importance in solving the issues in this case is reflected by such authorities as Hamilton v. Blackburn, 43 Tex.Civ.App. 153, 95 S.W. 1094, 1097:

"The descriptive matter offered in evidence by the appellant, and which is relied upon to control the express description stated in the deed, is not by the terms of the right of way deed called for as a matter of description, or as a part of the field notes tending to identify the land. The contention is that the footsteps of the surveyor who located the right of way could be found at places other than that called for in the descriptive matter contained in the deed, and to go to this point would extend the right of way some distance further north than 25 feet from the center of the track. The difficulty that lies in the way of supporting this contention is that the objects sought to be established by the appellant as found upon the ground, as indicating the boundaries of the right of way, according to its theory, *are not called for in the field notes of the deed under which it holds, and, in cases of this character, the rule seems to be well established that lines and boundaries cannot be constructed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor, when there are no calls in the grants for such objects.* Anderson v. Stamps, 19 Tex. 460; Ratliff v. Burleson, 7 Tex.Civ.App. [621] 624, 25 S.W. 983, 26 S.W. [1003] 1004, and cases there cited."

The court, in the above opinion, cites several other authorities stating they "announce the correct doctrine that the calls in the field notes of a survey cannot be controlled by parol evidence of the existence of objects which are not called for."

Further, in arriving at the intention of Choice in the location of said corners and boundaries as evidenced by the calls in his field notes, the calls therein for the beginning point to be at the northeast corner of the Outlaw and the southeast corner of the McCurry should be regarded as descriptive only, while *the calls for the stake and pine tree* in that same connection *must be regarded as locative of the spot where that surveyor put the stake intended to fix and definitely locate said southeast and northeast corner.* Based upon authority, it is said in 7 Tex.Jur. p. 163, § 35: "Calls in grants, deeds and

surveys, which serve to designate and identify land, are divided into two classes—one general, descriptive and directory, and the other special and locative. Where the calls conflict, the former kind, in harmony with the rule above stated, yield to the latter, although the object called for in the former may be entitled to greater consideration."

After the quotation from Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304, the text further states: "When location calls are identified on the ground they must be followed if possible, and that may be done as well in running lines by reversing the calls and running from any established or recognized location call. Location calls should not be abandoned and descriptive calls resorted to for establishing a disputed corner when the original survey made upon the ground is still in existence."

Jones v. Leath, 32 Tex. 329, was a boundary suit involving a call for the "Jones line." In addition, there were calls for marked trees and corners. On the face of the field notes these calls were supposed to coincide. As a matter of fact when applied to the ground they did not. The court said: "It is true that plaintiff's petition [field notes of survey] calls for Jones' line, but it also calls for marked trees and corners equally descriptive and more easily identified. And if it should appear that plaintiff's corners, calling for fixed, known and identified objects, should be inconsistent with what is supposed to be a line of another survey, *the former would be the controlling call, and especially where this line is of doubtful location."*

Likewise in Polk v. Reinhard (Tex.Civ. App.) 193 S.W. 687, 689, a boundary suit, the call for the west line of survey No. 400 also called for the beginning point to be *"a stake, the N.E. corner of Sur. 399* for N. W. corner of this survey *a L.O. 10" dia. mkd. X bears N. 70½ W. .42 vrs."* The evidence disclosed that the point marked on the ground did not coincide with the northeast corner of the survey No. 399, and with reference thereto the court said: "That a corner actually located and marked will control the call for another corner or line, which is mistakenly assumed to be at the same place, is well established." Citing Oliver v. Mahoney, 61 Tex. 610, .611; Gerald v. Freeman, 68 Tex. 201, 4 S.W. 256. The court held that the call for the northeast corner of survey No.

399 would be ignored. See, also, Howard v. Kopperl, 74 Tex. 494, 5 S.W. 627; Lafferty v. Stevenson (Tex.Civ.App.) 135 S.W. 216; Farrell & Co. v. Arkansas Fuel Oil Co. (C.C.A.) 84 F.(2d) 887.

■ In this connection the jury's finding and response to special issue No. 11 is significant. That issue reads: "Do you find from a preponderance of the evidence that there is a variance between the location of the north line of the Outlaw Survey, as a line run west from said post oak in special issue No. 1 referred to, and the location of the north line of the Outlaw survey as being a line running from a point 9 feet south of a pine in the east line of the McCurry survey, which point is substantially 950 vrs. north from the northeast corner of the Clayton tract, westwardly along the south line of the Brittain tract referred to in the description of the second tract of the oil and gas lease from Hughey to Kouns and through its southwest corner said corner being witnessed by a post oak north 15 deg. west 27 feet?"

The jury answered this question in the affirmative and thereby established a distinct variance between the lines mentioned. By reason of this variance and the nature of Hughey's testimony in general, we are of the opinion that the trial court had no authority to hold, as a matter of law, that Hughey in making the lease intended to adopt the lines called for in the original patents; that the court did so hold is reflected by the issues submitted, and especially by the first one, which is as follows: "Do you find from a preponderance of the evidence that the post oak tree mentioned in the testimony near the northeast corner of .the L. B. Outlaw Survey *is the post oak called for in the patent* of said original survey as a witness tree for *its northeast corner?* Answer Yes."

The evidence indicates that the location of ·the north boundary line of the Outlaw survey and the south boundary line of the McCurry survey was not definitely established on the ground. The uncertainty of the location of said line may have prompted Hughey to have said lines and corners relocated by J. C. Choice. This he may have had done for the purpose of definitely locating these lines and corners with the view of the division of said land and conveyance of same, or portions thereof. The use of Choice's field notes in the acquisition of said lands and conveyance thereof tends to prove

that the field notes of his resurvey for the corners and lines located by him were agreed upon by the interested parties who owned the land.

■ Further, it is undisputed that the 204 acres owned by Hughey in the Outlaw survey is contiguous to the 80 acres owned by him in the McCurry survey. In that situation when he came to make the lease to Kouns, he had a right to designate a division line between said tracts that did not coincide with the one designated in the original McCurry and Outlaw patents. If he did so designate a different line, it would be determinative of the property rights of those making and receiving conveyances under the Choice field notes. As said in Lagow v. Glover, 77 Tex. 448, 14 S.W. 141, 143: "If the true boundary line be doubtful or controverted, acquiescence of the parties in or their recognition of a particular line is evidence which should have great weight in determining their boundary, affording, as it does, a strong presumption that the line so recognized is the correct line, which presumption is strengthened by the lapse of time. Floyd v. Rice, 28 Tex. [341] 344. We do not understand the defendants to seriously controvert the true position of the line of the Lagow grant in question, *and the matter of acquiescence is not brought into the case for the purpose of showing where the true line is; nor did the charge of the court direct the mind of the jury to it with view to enable them to determine the true line.* If a line be recognized and acquiesced in by owners of adjacent lands, persons acquiring rights with knowledge of such recognition or acquiescence will be entitled to protection, for under such circumstances the owner, as to such persons, ought not to be heard to say that the recognized line was not the true line."

To the same effect are Anderson v. Atlantic Oil Producing Co. (Tex.Civ.App.) 83 S.W.(2d) 418; Roberts v. Blount (Tex.Civ. App.) 120 S.W. 933; King v. Mitchell, 1 Tex.Civ.App. 701, 21 S.W. 50; Sullivan v. Michael, 39 Tex.Civ.App. 564, 87 S.W. 1061.

■ What we have said points out that the location of the post oak (granting that it is the one called for in the patent) is practically immaterial here, certainly no more than evidentiary in the search for the footsteps of the surveyor Choice whose field notes were used in the oil and gas lease to Kouns. The plaintiff's title by virtue of his reacquisition, if any, of said 3.04-acre tract by judgment from the Magnolia is fix-

ed and determined by the terms of said lease, and as held in Byers v. Wallace, 87 Tex. 503, 28 S.W. 1056, 1058, 29 S.W. 760: "It is the law of this character of cases that the plaintiff must recover upon the strength of his own title, and not upon the weakness of the defendant's title; that is, the plaintiffs must have shown a right in themselves, or failed, notwithstanding it did not appear that the defendants had any right whatever." See, also, Ft. Worth & D. C. R. Co. v. Amason (Tex.Civ.App.) 260 S.W. 204, 206.

The rule is applicable to the instant case. The plaintiff has not succeeded in establishing by a preponderance of the evidence his rights in accordance with the terms of the grant or deed to Kouns and the assignment by him to the Magnolia Petroleum Company. He cannot avail himself of the weakness of defendants' title. If plaintiff's testimony goes no further than to indicate that he may or may not have title to the land in controversy, he is not entitled to a judgment.

We conclude that there is neither evidence nor findings by the jury conclusively establishing that the Hughey oil and gas lease to Kouns fixed the north boundary line of the Outlaw survey to be a line running west from the post oak contended for by Hughey and referred to in issue No. 1, and, as said, it was error for the court to assume that Choice in making his survey ever intended to make the post oak the point from which to run the dividing line of the two tracts described in the lease. If he did so intend, it should have been established by the testimony and so found by the jury.

Stated somewhat differently, the burden on the plaintiff Hughey required proof that the south boundary line of the land (3.04 acres) he claimed (necessarily under his original lease to Kouns and the latter's assignment to the Magnolia) coincided with the original north boundary line of the Outlaw survey running west from the post oak referred to. This could be true only if the spot marked by the stake and pine was the same beginning point designated in said Outlaw and McCurry patents by "post, from which a post oak 12 inches dia. brs. S 5 W 6 vrs., and a red oak 16 inches dia. brs. N 17 E 8 vrs.," which latter point is taken by plaintiff to be evidenced by the "post oak" spoken of in this record.

A specific discussion of each issue submitted in the light of the assignments relating thereto will not be made, but the points rais-

ed have been carefully examined with the result that we have reached the conclusion stated with reference to the legal effect of the verdict. We sustain the assignments above discussed.

The errors pointed out in the submission of the case to the jury in any event would work a reversal of the judgment, if not a rendition of the same in favor of defendants, but there are other and undoubted grounds upon which the judgment of the trial court should be reversed and here rendered for defendants.

■ The facts and circumstances constituting such reasons are numerous and a detailed statement of the same is unnecessary. We shall, therefore, state in substance and as briefly as possible the facts which impel us to this conclusion.

As stated in the previous portions of this opinion, there is a conflict in the testimony as to the true location on the ground of the north line of the Outlaw survey according to the field notes in the patent. Be that as it may, the testimony in this record conclusively establishes the fact that there was a well-marked line of occupancy along the north line of the Hughey tract in the Outlaw and the south line of the Hughey tract in the McCurry survey, and that it had been so recognized for many years by the plaintiff as such boundary line. This line of occupancy had been surveyed as such common line between said surveys between 1900 and 1908 and again about 1912, as well as later. This line has been agreed upon and accepted as the dividing line of the surveys by plaintiff and his predecessors in title for many years and until the filing of this suit.

Prior to plaintiff's birth, his father and uncle owned the two adjacent tracts in the Outlaw and McCurry surveys and built and maintained a fence (running east and west) between these properties or parts thereof, and the adopted division line was likewise evidenced by an old road passing along the same and in general use for many years. The fence was repaired from time to time by plaintiff, and a considerable portion thereof has been maintained intact to the time of trial. There were evidences of the old road as late as 1931.

The plaintiff testified that his father built the fence marking the north line of the land in the Outlaw; that after his father's death his mother, his brothers and sisters, his uncle and himself had the land surveyed for the purpose of partitioning the 160 acres in the McCurry; that he went with the surveyor Bradshaw, saw him mark a post oak to witness the southwest corner of said tract at the old fence line and drive a stake in the fence line to witness the southeast corner of the west 80 acres, known later as the Brittain tract, and which was then awarded to the uncle. That he knew that Bradshaw called this the north line of the Outlaw and the south line of the McCurry; that it was necessary in order to partition the 160 acres of land to locate the south line of the McCurry. He admitted that although he had some doubt at the time as to the true location of the north boundary of the Outlaw that he and his mother and relatives in partitioning the 160-acre tract accepted and acted upon the lines as thus marked by the field notes as prepared by Bradshaw. That his survey placed the south line of the McCurry right along the old fence line in which the southwest and southeast corners of the Brittain were located. That the fence was 75 to 90 feet north of where he now claims the north line of the Outlaw survey to be.

Still later, plaintiff employed Hoskins, another surveyor, to run out the lines of the Outlaw; that he was with him when he put the northwest corner of said survey at the same point where Bradshaw had put it and marked the old fence line as the north line thereof. He testified that Hoskins in surveying toward the north line of the tract stopped about 100 feet south of the old fence and said: "Here is where your west line would stop for the 204 acres, but you go on to the fence." Plaintiff adopted the survey of Hoskins and continued to claim the fence as the dividing line of the surveys.

Thereafter, in 1918, and with the view of acquiring the interest of his mother, brothers and sisters in said lands, plaintiff had another survey made by Choice. Again the same line passing along the old fence running east and west through the southwest and southeast corners of the Brittain was marked on the ground and called for as the south line of the McCurry and the north line of the Outlaw. That he accepted the Choice field notes; acquired the interest of his mother and relatives in the land, using these field notes; that he made the oil and gas lease to Kouns in accordance with them. That he claimed for many years the old fence as the north boundary line of the Outlaw, and was so claiming when he made the oil and gas lease to Kouns.

It is uncontradicted that a straight line passing along the old fence through the es-

tablished southwest and southeast corners of the Brittain will cut the east line of the McCurry and Outlaw at a point 9 feet south of the pine tree or stump claimed by defendants as the beginning point of the Choice survey. That point is also 950 (952) varas north of the established northeast corner of the Clayton land.

The defendants have within the plain view and knowledge of Hughey spaced their oil wells 330 feet from the line passing along and with the old fence and through the southwest and southeast corners of the Brittain. The Magnolia has likewise spaced its wells to the north. In so locating the wells, the companies acted under the regulations of the Railroad Commission and upon interpretation of the field notes of the conveyances previously adopted and used by Hughey in the acquisition of the lands and the making of the oil and gas lease to Kouns and subsequent assignments thereunder.

There is much other testimony to the same effect as that to which we have just referred, but it is unnecessary to make specific reference thereto. Suffice it to say that we have carefully considered same and are of the opinion that the testimony of the plaintiff himself, and that offered by him, conclusively proves that the boundary line contended for by defendants is now and has been for many years established as the north line of the Outlaw and the south boundary line of the McCurry surveys. This is by virtue of the agreements between the plaintiff, his mother, brothers, and sisters and his uncle, and the latter's surviving heirs. Not only as to the above parties but to all the world having a legal interest therein the plaintiff has by his acquiescence, acts, agreements, express and implied, affirmatively established said common boundary line between the Hughey tract in the Outlaw and the Hughey tract in the McCurry, the same running east and west in line with the old fence and with the south boundary line of the Brittain tract of land. Certainly the plaintiff's testimony disproves his right to recover upon the strength of his own title.

The plaintiff's acts and conduct through the years in settling and fixing the boundary of his land are in harmony with sound policy and legal principles. The facts in Cooper v. Austin, 58 Tex. 494, are substantially the same as those in the instant case. In that opinion, quoting from George v. Thomas, 16 Tex. 74, 89, 67 Am.Dec. 612, which cited other authorities, the Supreme Court said:

" 'These settlements of boundary are common, beneficial, approved and encouraged by courts, and ought not to be disturbed, though it was afterwards shown that they had been erroneously settled. Convenience, policy, necessity, justice, all unite in favor of supporting such an amicable settlement.'

"These authorities show that neither the fact of mistake, nor that the acquiescence in the agreement has been for a very brief period of time, vary the rule, which rests on the soundest principles of public policy and justice."

To the same effect is Coleman v. Smith, 55 Tex. 254, 259: "And so, when the lines he ran cannot now be run, and the boundaries he fixed have become of doubtful identity, and the parties to be affected by them have mutually agreed that here he fixed his lines and set their bounds, such agreement should be held conclusive; not subject to be set aside or reopened upon any subsequent discovery that possibly a mistake was made in that agreement as to the true locality. * * * The parties have put their fences up and acceded to it. * * * It ought to stand."

Other authorities announcing and applying the same rules of law under facts similar to those reflected by the pleadings and testimony in this case are: Bearden v. Schenecker (Tex.Civ.App.) 240 S.W. 996; Lecomte v. Toudouze, 82 Tex. 208, 17 S.W. 1047, 27 Am.St.Rep. 870; Schiele v. Kimball (Tex.Civ.App.) 150 S.W. 303; Thompson on Real Property, Vol. 4, § 3107, p. 198. At the page indicated in the text it is said: " 'Having agreed upon the line, or agreed upon a mode by which it shall be determined, and having accepted and acquiesced in it by the unequivocal acts of taking possession according to the line, they and their privies are estopped from after disputing it. The estoppel arises from the acts of the parties in taking possession, and occupying their respective tracts to the line thus agreed upon and determined.' The courts, on the contract, encourage such settlements as a means of suppressing litigation."

Since the undisputed testimony establishes the boundary line contended for by defendants, we conclude that the trial court erred in not instructing a verdict in favor of the defendants. Such instruction would have been warranted irrespective of the original north boundary line of the Outlaw survey according to its patent.

There are many other assignments of error not discussed in this opinion. The

624

conclusions 'stated and the disposition we make of the case render them immaterial. The judgment cannot be sustained on any proposition advanced by the plaintiff, and we sustain defendants' right to peremptory instruction in accordance with the propositions and assignments under consideration.

For the reasons assigned, the judgment of the trial court is reversed and judgment here rendered that plaintiff take nothing by his suit.